VAN HORN LODGE, INC., an Alaska Corporation; Daniel Barnett and Howard Groff, Appellants,

v.

Hugh WHITE, Paul Jones and White and Jones, a Professional Corporation, Appellees.

No. 4447.

Supreme Court of Alaska.

May 1, 1981.

Timothy H. Stearns, Anchorage, for appellants.

Robert L. Eastaugh, Delaney, Wiles, Moore, Hayes & Reitman, Inc., Anchorage, for appellees.

Before RABINOWITZ, C. J., CONNOR and BURKE, JJ., and EBEN H. LEWIS, Superior Court Judge.

OPINION

BURKE, Justice.

The issue in this appeal is whether the superior court erred in ruling that a legal

malpractice action was barred by Alaska's two year statute of limitations, AS 09.10.-070.[1]

Van Horn Lodge, Inc., and two of its officers, Daniel Barnett and Howard Groff (hereinafter referred to collectively as Van Horn) began an action in the superior court against Hugh White and Paul Jones, Van Horn's former attorneys. The complaint alleged professional malpractice on the part of White and Jones. The superior court concluded that Van Horn's action was barred by AS 09.10.070, since the complaint was filed more than two years after the cause of action arose. Summary judgment was granted in favor of the defendants, White and Jones.[2] This appeal followed.

## I

In July, 1975, White and Jones were hired to represent Van Horn in a dispute between Van Horn and Donna and Gerald Ahearn, the purported lessees of a hotel owned by Van Horn. At that time, three separate lawsuits were already pending between Van Horn and the Ahearns. White and Jones entered their appearance in each of those actions and, on December 5, 1975, filed another complaint against the Ahearns for forcible entry and detainer.[3] On December 31, 1975, the superior court ordered the four cases consolidated.[4] In its order of consolidation, the court ordered Van Horn to file an amended complaint by January 23, 1976, repleading Van Horn's various claims for relief.

Shortly after the court's December 31 order, White and Jones advised Van Horn that they were concerned about Van Horn's failure to pay for their services. According

to White and Jones, they had already advanced more than $3,000 in litigation costs and were owed attorney's fees in excess of $20,000. In discussions that began on January 5, 1976, White and Jones advised Van Horn that they could not afford to provide further legal services without payment. When told by Van Horn that there was not sufficient money available to make a satisfactory payment on the amount allegedly owed to them, White and Jones asked Van Horn to allow them to withdraw. On January 20, 1976, Van Horn consented to the withdrawal in writing. The withdrawal was formally approved by the superior court on February 2, 1976.[5]

During the period that they represented Van Horn, White and Jones were co-counsel with attorney Thomas Keever. Prior to their withdrawal, White and Jones advised Van Horn of the January 23 deadline for the filing of Van Horn's amended complaint, as well as other deadlines, and urged Van Horn to contact Mr. Keever immediately.

On February 11, 1976, Mr. Keever moved for an extension of time for the filing of Van Horn's amended complaint. The motion was granted, but the superior court imposed certain "sanctions" for Van Horn's failure to meet the January 23 pleading deadline. The sanctions were announced orally on February 11, 1976, and set forth in a written order entered several days later, on February 19, 1976. The "sanctions" required Van Horn to return a liquor license to the Ahearns or forego receipt of monthly rent in the amount of $3,500 per month.

On February 14, 1978, Van Horn sued White and Jones for professional malpractice. Van Horn's complaint consisted

---

1. AS 09.10.070 provides:

   *Actions to be brought in two years.* No person may bring an action (1) for libel, slander, assault, battery, seduction, false imprisonment, or for any injury to the person or rights of another not arising on contract and not specifically provided otherwise; (2) upon a statute for a forfeiture or penalty to the state; or (3) upon a liability created by statute, other than a penalty or forfeiture; unless commenced within two years.

2. Rule 56, Alaska R.Civ.P.

3. See AS 09.45.060–.160; Rule 85, Alaska R.Civ.P.

4. See Rule 42(a), Alaska R.Civ.P.

5. Civil Rule 81 provides in part: "An attorney who has appeared for a party in an action or proceeding may be permitted to withdraw as counsel for such party ... (iii) Where the party expressly consents in open court or in writing to the withdrawal of his attorney." Rule 81(d)(3), Alaska R.Civ.P.

of two "claims for relief."[6] The first alleged that the sanctions imposed "on or about February 11, 1976," had been proximately caused by the "negligence and nonfeasance" of White and Jones, resulting in damages exceeding $30,000 "by loss of rents from approximately February 11, 1976." The second claim for relief alleged that White and Jones "negligently delayed institution of a forcible entry and detainer action against [the Ahearns] until on or about December, 1975," and that "Said negligence and misfeasance ... was the proximate cause of damages to plaintiffs, in a sum in excess of $35,000.00."

White and Jones answered the complaint, denying Van Horn's allegations of negligence and proximate cause. White and Jones affirmatively alleged that they had advised Van Horn of their desire to withdraw some weeks before January 20, 1976; that Van Horn had executed a formal consent to their withdrawal on January 20, 1976; that Van Horn was aware of the January 23 pleading deadline prior to their withdrawal; and that Thomas Keever continued to represent Van Horn. As one of several affirmative defenses, White and Jones alleged that Van Horn's action was barred by the two-year statute of limitations, AS 09.10.070.[7]

White and Jones thereafter moved for summary judgment, partly in reliance on their affirmative defense of the statute of limitations. On October 9, 1978, the superior court granted the motion, after concluding that the action was barred by AS 09.10.070, since it was not filed within two years after the cause of action arose. Upon entry of a final judgment in favor of White and Jones, Van Horn filed a notice of appeal.

## II

Van Horn's first contention is that the superior court erred in ruling that the action was barred by AS 09.10.070. That section requires an action sounding in *tort* to be commenced within two years after the cause of action accrues. *Silverton v. Marler*, 389 P.2d 3 (Alaska 1964). Van Horn argues that its action, although alleging negligence on the part of White and Jones, actually arose out of a *contract* between the parties and that, therefore, AS 09.10.050[8] is the applicable statute of limitations. Under AS 09.10.050 an action upon a contract may be commenced within six years from the time the cause of action arises. Under the latter section, Van Horn's complaint against White and Jones was timely.

We hold that the superior court was correct in ruling that AS 09.10.070 provides the applicable period of limitation in the case at bar. Van Horn's complaint sounded in tort, rather than contract. The duty that White and Jones allegedly breached was a duty of reasonable care imposed by law. The contract only gave rise to the duty; the claim that White and Jones breached an implied term of their contract of employment, to render competent and diligent legal services, is only a claim that they failed to exercise due care. There is no evidence of an agreement to obtain a particular result or to do a particular thing. Thus, we believe the essence of Van Horn's complaint was negligence, and the gravamen thereof lies in tort. Accordingly, the period of limitation found in AS 09.10.070, rather than AS 09.10.050, applies. *Silverton v. Marler*, 389 P.2d at 3–4. *See Austin v. Fulton Ins. Co.*, 444 P.2d 536 (Alaska 1968); *Pepsi Cola Bottling Co. v. Superior Burner Service Co.*, 427 P.2d 833 (Alaska 1967).

## III

The next issue is whether the applicable statute of limitations, AS 09.10.070, barred Van Horn's action in the instant case.

**6.** Rule 8(a), Alaska R.Civ.P.

**7.** Quoted in n. 1, *supra*.

**8.** AS 09.10.050 provides:
*Actions to be brought in six years.* No person may bring (1) upon a contract or liability, express or implied, excepting those mentioned in § 40 or 55 of this chapter; (2) for waste or trespass upon real property; or (3) for taking, detaining, or injuring personal property, including an action for its specific recovery, except those mentioned in § 55 of this chapter; unless commenced within six years.

The superior court ruled that the two year period allowed by that section began to run on February 11, 1976, the date upon which the court orally announced the sanctions being imposed for Van Horn's failure to file an amended complaint by January 23, 1976. Van Horn contends that such period of limitation began to run at some later date. As to its first claim for relief, Van Horn argues that the two year period began to run on the date it first learned that the sanctions had been imposed, in any event no sooner than February 19, 1976, when the written order formally imposing those sanctions was entered. As to its second claim for relief, Van Horn argues that the period began to run in October, 1976, when it first learned the full extent of the loss of rent money allegedly caused by White and Jones' delay in filing an action for forcible entry and detainer against the Ahearns.

White and Jones' duty to represent Van Horn terminated when Van Horn consented to their withdrawal on January 20, 1976. Thereafter, they were under no obligation to file the amended complaint or otherwise represent Van Horn in Van Horn's dispute with the Ahearns. The only duty that might have remained was the duty to advise Van Horn of the pending deadline and the need to take timely action to protect its interests. Since Van Horn makes no contention that this duty was breached, we conclude that no liability could attach for White and Jones' failure to file the amended complaint. Thus, wholly apart from the question of whether Van Horn's first claim for relief was barred by AS 09.10.070, we conclude that White and Jones were entitled to judgment, as a matter of law, on Van Horn's first claim for relief. Having reached this conclusion on the merits of Van Horn's first claim for relief, we need not reach the question of precisely when the period of limitations on this claim began to run.

As to Van Horn's second claim for relief, we conclude that the action was barred by AS 09.10.070. White and Jones'

failure to file an action for forcible entry and detainer until December, 1975, was clearly known to Van Horn more than two years prior to the date upon which it filed its complaint for malpractice. Also known to Van Horn was the fact that it was not receiving rent from the Ahearns during the period preceding the filing of the complaint for forcible entry and detainer. While the full extent of the loss allegedly attributable to such acts or omissions on the part of White and Jones may not have been known, Van Horn was certainly aware of all of the essential facts forming the basis for its second claim for relief more than two years prior to the time it filed its complaint against White and Jones. Such being the case, its second claim for relief was barred by AS 09.10.070.

## IV

Van Horn's final contention is that the superior court erred in ruling Van Horn's motion to amend its complaint moot. Given the nature of the proposed amendment, we conclude that there was no error.[9]

The judgment of the superior court is AFFIRMED.

MATTHEWS and COMPTON, JJ., not participating.

RABINOWITZ, Chief Justice, dissenting in part.

Since I am of the view that there are material questions of fact as to whether or not White and Jones breached the duty of representation owed to Van Horn, and as to the time at which the applicable tort statute of limitations commenced to run on Van Horn's claims against White and Jones, I would not affirm the superior court's grant of summary judgment.

White and Jones owed their client Van Horn a duty to take reasonable steps to avoid foreseeable prejudice to its rights when they withdrew from an extremely complex case three days before the consolidated complaint was scheduled to be filed.

9. Rule 15(a), Alaska R.Civ.P.

*See* Alaska Code of Professional Responsibility, DR 2–110.[1] I do not think that the record contains evidence sufficient to support a holding that there was no material question of fact as to whether White and Jones had fulfilled their duty of representation to Van Horn.[2] Because the superior court disposed of the case by holding that Van Horn's action was time-barred under AS 09.10.070,[3] it did not consider that issue.

Since I would not affirm the summary judgment on the merits, as the majority does, I find it necessary to address the question of the effect of AS 09.10.070 upon Van Horn's ability to maintain this action. We have not previously determined when

---

1. The Alaska Code of Professional Responsibility, DR 2–110(A)(2), provides:

   In any event, a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules.

   Further, EC 2–32 provides:

   A decision by a lawyer to withdraw should be made only on the basis of compelling circumstances, and in a matter pending before a tribunal he must comply with the rules of the tribunal regarding withdrawal. A lawyer should not withdraw without considering carefully and endeavoring to minimize the possible adverse effect on the rights of his client and the possibility of prejudice to his client as a result of his withdrawal. Even when he justifiably withdraws, a lawyer should protect the welfare of his client by giving due notice of his withdrawal, suggesting employment of other counsel, delivering to the client all papers and property to which the client is entitled, cooperating with counsel subsequently employed, and otherwise endeavoring to minimize the possibility of harm. Further, he should refund to the client any compensation not earned during the employment.

   DR 2–110(C)(1)(f) permits a lawyer to withdraw because his client "[d]eliberately disregards an agreement or obligation to the lawyer as to expenses or fees." This permission to withdraw does not constitute permission to disregard the obligations imposed by DR 2–110(A)(2) and EC 2–32.

   Although the Code of Professional Responsibility disclaims any attempt to "define standards for civil liability of lawyers for professional conduct," Alaska Code of Professional Responsibility, Preliminary Statement, I agree with those commentators who have argued that the Code is nonetheless significant to a determination of whether a lawyer has behaved with the degree of care, skill, and prudence demanded of him by the profession. *See* Wolfram, *The Code of Professional Responsibility as a Measure of Attorney Liability in Civil Litigation*, 30 S.C.L.Rev. 281 (1979); Thode, *Canons 6 and 7: The Lawyer—Client Relationship*, 48 Tex.L.Rev. 367 (1970). *See also Woodruff v. Tomlin*, 616 F.2d 924, 936 (6th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 246, 66 L.Ed.2d 114 (1980).

2. Although the majority holds that White and Jones were not negligent as a matter of law, the following considerations persuade me that there is a question of fact as to White and Jones' compliance with the standard imposed by DR 2–110:

   a. Van Horn formally consented to the withdrawal on January 20 (Tuesday) and was advised of White and Jones' desire to withdraw well in advance of that date. However, the consolidated complaint was due on January 23 (Friday) and the trial judge in the original action recognized the fact that it was impractical to expect substitute counsel to meet this deadline. Furthermore, I find nothing to indicate that either Van Horn or co-counsel Mr. Keever expected to be responsible for filing the consolidated complaint without the benefit of the services of White and Jones. It seems to me that to take "reasonable steps to avoid foreseeable prejudice to the rights of [their] client," White and Jones should have either filed the complaint or informed Van Horn or Mr. Keever sooner of their intention not to file the consolidated complaint.

   b. I fail to see how the accumulated unpaid fees and costs would justify the untimely withdrawal of White and Jones.

   c. While it is true that Van Horn was also represented by co-counsel, Mr. Keever, Van Horn alleges that Keever had not planned to take an active role as co-counsel and that there was a possibility that he would be a material witness at trial.

   d. It is irrelevant that the trial court did not require White and Jones to continue with the case. The trial court consented to the withdrawal after the harm from the untimely withdrawal had already occurred, and requiring White and Jones to continue with the case at that time would have served no purpose.

3. AS 09.10.070 provides in relevant part:

   No person may bring an action (1) for libel, slander, assault, battery, seduction, false imprisonment, or for any injury to the person or rights of another not arising on contract and not specifically provided otherwise ... unless commenced within two years.

the statute of limitations begins to run as to a malpractice action against an attorney. Van Horn urges the adoption of a "discovery" rule—namely, that the statute does not begin to run until the aggrieved client discovers the damage caused by the attorney's negligence. In support of this contention, Van Horn relies upon the California Supreme Court's adoption of this rule in *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 98 Cal.Rptr. 837, 844–46, 491 P.2d 421, 428–30 (Cal.1971).[4] White and Jones suggests that the statute begins to run either when the damage has been suffered, *see Austin v. Fulton Insurance Co.*, 444 P.2d 536, 539 (Alaska 1968), or when the attorney-client relationship has ended.[5]

Because of the fiduciary nature of the attorney-client relationship, I think the last proposed starting point for the statute (at the termination of the attorney-client relationship) is inappropriate. If we were to adopt a "discovery" standard for the beginning of the statutory period, that standard would require damage to have been suffered before the statute begins to run.[6] Thus, regardless of whether we were to adopt the "damage" rule or the "discovery" rule, it would be essential to make a determination as to when Van Horn sustained damage.

In *Austin v. Fulton Insurance Co.*, 444 P.2d at 539, we noted that "[t]he statute of limitation as to torts does not usually begin to run until the tort is complete." *See Restatement (Second) of Torts* § 899, Comment c (1979). On February 11, 1976, the superior court announced it would impose sanctions on Van Horn for its failure to file the consolidated complaint on time, noting that the delay had been caused by the late withdrawal of White and Jones. These "sanctions" were apparently stated in the alternative; and the record does not indicate whether the nature of the sanction ultimately imposed was first determined on February 19, when the superior court issued its written order, or at some time prior to that date. I do not believe that the tort alleged to have been committed by White and Jones can be said to have been complete until the nature of the sanction imposed on Van Horn was established. Since the record on appeal does not contain information sufficient to allow a determination of the time at which that occurred, I would remand for a determination of the date on which Van Horn was initially damaged as a result of the conduct of its attorneys.[7] If

---

4. The "discovery" rule for accrual of legal malpractice actions has recently been adopted by statute in California, Cal. Code of Civ.Pro. § 340.6 (West Supp. 1979); the statute does, however, impose an absolute limit of four years from the date of the wrongful act in addition to the one-year-from-discovery rule.

5. White and Jones rely on *Gilbert Properties, Inc. v. Millstein*, 33 N.Y.2d 857, 352 N.Y.S.2d 198, 307 N.E.2d 257 (1973), and *Keaton Co. v. Kolby*, 27 Ohio St.2d 234, 271 N.E.2d 772 (1971), for this approach.

   *Millstein* held that an attorney malpractice action accrues, at the latest, when the attorney-client relationship ends. It relied upon *Borgia v. City of New York*, 187 N.E.2d 777, 12 N.Y.2d 151, 237 N.Y.S.2d 319 (1962), a medical malpractice action in which the Court of Appeals considered the deadline for filing an action against the city. The claim had been filed against Kings County Hospital, which had negligently allowed Borgia's infant son to suffer severe brain damage due to lack of oxygen. Faced with a 90-day limitation on filing claims against the city, the court held that the statute had begun to run at the end of the continuous course of treatment rather than on the date of the negligent acts.

   *Keaton* was decided by analogy to earlier Ohio cases holding that Ohio's special malpractice statute begins to run in a medical malpractice case no later than the day that the physician-patient relationship ends. The concurring opinion of Corrigan, J., 271 N.E.2d at 775, notes that the discovery rule was not argued to the Ohio court in that case.

6. *See generally*, Note, *Legal Malpractice—Is the Discovery Rule the Final Solution?*, 24 Hastings L.J. 795 (1973): "Under the newly adopted rule, the cause of action accrues at the time the client discovers or should have discovered the attorney's negligence and is damaged thereby."

7. In *Budd v. Nixen*, 6 Cal.3d 195, 98 Cal.Rptr. 849, 852–53, 491 P.2d 433, 436–37 (1971), the California Supreme Court held that the date upon which damage accrues is a question of fact. That court also held that its adoption of the discovery rule in attorney malpractice cases incorporated the damage rule, so that the statute begins to run upon the occurrence of the later of the two events.

Van Horn was first damaged on or after February 14, 1976, then its malpractice complaint against White and Jones was timely under both the "damage" rule and the "discovery" rule.

I concur in the court's holding that Van Horn's claim based on the delay by White and Jones in filing an action for forcible entry and detainer was barred by AS 09.10.-070.