**GREATER AREA INCORPORATED,**
**Appellant,**

v.

**Bruce BOOKMAN, Appellee.**

**No. 5557.**

Supreme Court of Alaska.

Nov. 26, 1982.

Stan Stanfill, Kevin F. McCoy, Hahn, Jewell & Stanfill, Anchorage, for appellant.

David H. Thorsness, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellee.

Before RABINOWITZ, C.J., CONNOR, BURKE and COMPTON, JJ., and BLAIR, Superior Court Judge.*

OPINION

BURKE, Justice.

The issue in this appeal is whether the superior court erred when it granted summary judgment in favor of an attorney who allegedly committed malpractice. To resolve the question, we must determine whether the lower court correctly ruled that the action was barred by the statute of limitations. We hold that summary judgment was improperly granted.

Early in 1976, attorney Bruce Bookman was engaged to assist in the formation of Greater Area Incorporated [GAI], a corporation designed to provide taxi services. Mr. Bookman participated in several organizational meetings attended by promoters and shareholders of the new venture. He also assisted in preparing draft articles of incorporation and a pre-incorporation stock subscription agreement circulated at a meeting on April 3, 1976. After about a dozen shareholders signed the subscription agreement, which provided for the exchange of taxicab permits for stock in the corporation, the corporation was formed. Mr. Bookman was thereafter named corporate counsel and drafted the articles of incorporation. The articles were properly filed with the Commissioner of Corporations on April 9, 1976. Mr. Bookman failed, however, to register the corporation's stock as required by AS 45.55.070.[1]

On March, 1977, two dissident shareholders engaged an attorney to regain ownership of the taxicab permits they had transferred to the new corporation. One basis of the challenge was the corporation's failure

---

* Blair, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

1. The statute provides:

It is unlawful for a person to offer or sell a security in this state unless (1) it is registered under this chapter or (2) the security or transaction is exempted under AS 45.55.140. AS 45.55.070; *see Hentzner v. State,* 613 P.2d 821, 822 (Alaska 1980).

to register the stock under AS 45.55.070. Bookman informed GAI that it was possible that the dissident shareholders' nonregistration challenge would succeed, and advised the corporation to consult with Mr. Miles Schlossberg, an attorney with securities expertise. On May 19, 1977, a meeting was held between Bookman, Schlossberg and GAI. Schlossberg told Bookman and GAI that he believed the dissident shareholders' nonregistration claim would fail because it appeared that GAI was a nonprofit cooperative and exempt from registration under AS 45.55.140(a)(11).[2]

On June 10, 1977, the dissident shareholders filed suit against GAI claiming, among other things, that the stock was not registered. Mr. Schlossberg was formally retained to defend against the suit on July 6, 1977. After taking several depositions, Mr. Schlossberg advised the corporation on February 22, 1978, that the dissident shareholders had a greater than fifty percent chance of prevailing on the nonregistration issue. GAI then settled with the shareholders and the lawsuit was dismissed on March 3, 1978. GAI, at this point, had incurred attorney's fees in excess of $5,000.00 and had relinquished four taxicab permits valued at $30,000.00 each.

On June 7, 1979, GAI sued Mr. Bookman, alleging that his failure to properly register the corporation's stock under AS 45.55.070 constituted negligence. Mr. Bookman moved for summary judgment, arguing that the two year statute of limitations for tort actions had expired, thereby barring GAI's action. The trial court granted the motion and GAI now appeals. Our task is to determine whether the trial court properly applied the statute of limitations and whether the resulting grant of summary judgment was correct.

■ The statute of limitations governing personal injury actions provides:

> No person may bring an action (1) for libel, slander, assault, battery, seduction, false imprisonment, or for any injury to the person or rights of another not arising on contract and not specifically provided otherwise; (2) upon a statute for a forfeiture or penalty to the state; or (3) upon a liability created by statute, other than a penalty or forfeiture; unless commenced within two years.

AS 09.10.070. This is the statute to be applied in attorney malpractice actions based on negligence. *See Van Horn Lodge, Inc. v. White,* 627 P.2d 641, 643 (Alaska 1981).

■ Our next task is to determine when the statute of limitations begins to run as to a malpractice action against an attorney. Our statute is silent on this question and the issue is one of first impression in this jurisdiction. Courts in other jurisdictions have utilized one of four alternative rules. The statute of limitations may begin to run on the date of the negligent act or omission, on the date actual harm occurred, on the date of discovery, or on the date the attorney-client relationship is terminated. *See* Annot., 18 A.L.R.3d 978 (1968).

Of the various alternatives, the one that we believe most appropriate for our own jurisdiction is the so-called "discovery rule." According to the best formulation of that rule, the statute of limitations for legal malpractice does not begin to run until the client discovers, or reasonably should discover, the existence of all the elements of his cause of action.[3] *See Neel v. Magana, Olney, Levy, Cathcart & Gelfand,* 491 P.2d

---

**2.** AS 45.55.140 provides in part:

(a) The following securities are exempted from AS 45.55.070:

(11) a security issued by a person organized and operated not for private profit but exclusively for religious, educational, benevolent, charitable, fraternal, social, athletic, or reformatory purposes, or as a chamber of commerce or trade or professional association.

**3.** Thus, if the client discovers his attorney's negligence before he suffers consequential damages, the statute of limitations will not begin to run until the client suffers actual damages. *See Budd v. Nixen,* 491 P.2d 433, 434 (Cal.1971). As we stated in *Austin v. Fulton Insurance Co.,* 444 P.2d 536, 539 (Alaska 1968), "a tort is ordinarily not complete until there has been an invasion of a legally protected interest of the plaintiff." *See* Restatement (Second) of Torts § 899, Comment c (1979).

421, 422 (Cal.1971); *Budd v. Nixen,* 491 P.2d 433 (Cal.1971); *Raymond v. Eli Lilly & Co.,* 117 N.H. 164, 371 A.2d 170, 174 (1977). In reaching this conclusion, we rely heavily upon the reasoning of the California Supreme Court in *Neel v. Magana:*

> In ordinary tort and contract actions, the statute of limitations, it is true, begins to run upon the occurrence of the last element essential to the cause of action. The plaintiff's ignorance of the cause of action, or of the identity of the wrongdoer, does not toll the statute. In cases of professional malpractice, however, postponement of the period of limitations until discovery finds justification in the special nature of the relationship between the professional man and his client.
>
> In the first place, the special obligation of the professional is exemplified by his duty not merely to perform his work with ordinary care but to use the skill, prudence, and diligence commonly exercised by practitioners of his profession. If he further specializes within the profession, he must meet the standards of knowledge and skill of such specialists.
>
> Corollary to this expertise is the inability of the layman to detect its misapplication; the client may not recognize the negligence of the professional when he sees it. He cannot be expected to know the relative medical merits of alternative anesthetics, nor the various legal exceptions to the hearsay rule. If he must ascertain malpractice at the moment of its incidence, the client must hire a second professional to observe the work of the first, an expensive and impractical duplication, clearly destructive of the confidential relationship between the practitioner and his client.
>
> In the second place, not only may the client fail to recognize negligence when he sees it, but often he will lack any opportunity to see it. The doctor operates on an unconscious patient; although the attorney, the accountant, and the stockbroker serves the conscious client, much of their work must be performed out of the client's view. In the legal field, the injury may lie concealed within the obtuse terminology of a will or contract; in the medical field the injury may lie hidden within the patient's body; in the accounting field, the injury may lie buried in the figures of the ledger.
>
> Finally, the dealings between petitioner and client frame a fiduciary relationship. The duty of a fiduciary embraces the obligation to render a full and fair disclosure to the beneficiary of all facts which materially affect his rights and interests. "Where there is a duty to disclose, the disclosure must be full and complete, and any material concealment or misrepresentation will amount to fraud." (*Pashley v. Pacific Elec. Ry. Co.* (1944) 25 Cal.2d 226, 235, 153 P.2d 325, 330.) Thus, as we stated in *Amen v. Merced County Title Co.* (1962) 58 Cal.2d 528, 534, 25 Cal.Rptr. 65, 68, 375 P.2d 33, 36, "Cases in which the defendant stands in a fiduciary relationship to the plaintiff are frequently treated as if they involved fraudulent concealment of the cause of action by the defendant. The theory is that although the defendant makes no active misrepresentation, this element 'is supplied by an affirmative obligation to make full disclosure, and the non-disclosure itself is a "fraud".' "
>
> Thus the fact that a client lacks awareness of a practitioner's malpractice implies, in many cases, a second breach of duty by the fiduciary, namely, a failure to disclose material facts to his client. Postponement of accrual of the cause of action until the client discovers, or should discover, the material facts in issue vindicates the fiduciary duty of full disclosure; it prevents the fiduciary from obtaining immunity for an initial breach of duty by a subsequent breach of the obligation of disclosure.

491 P.2d at 428–29 (footnotes omitted).

It remains for us to consider the date at which GAI knew or reasonably should have known of its alleged cause of action, thereby permitting the statute of limitations to begin to run. Ordinarily, we would remand to the trial court for such a determination,

since it involves a question of fact. *See Budd v. Nixen,* 491 P.2d 433, 437–38 (Cal. 1971) (when plaintiff suffered damage raises a question of fact). Here, however, the undisputed facts compel us to hold, as a matter of law, that GAI's action was not barred by the statute.

Bookman contends that GAI initially discovered the existence of his allegedly negligent act more than two years before suing him for malpractice on June 7, 1979. Although Bookman informed GAI in March or April of 1977 that there might be a possible problem with the nonregistration of GAI's stock, GAI exercised reasonable diligence, and consulted with Schlossberg on May 19, 1977. Schlossberg told Bookman and GAI that he believed GAI's stock did not need to be registered. It was not until February 22, 1978 that Schlossberg informed GAI that the dissident shareholders had a greater than fifty percent chance of prevailing on the nonregistration issue.

Thus, it is clear that GAI did not discover the existence of Bookman's allegedly negligent act prior to two years before it filed its complaint on June 7, 1979. Accordingly, GAI may proceed with its malpractice action against Bookman.[4]

The judgment of the trial court is REVERSED and REMANDED for further proceedings consistent with this opinion.

MATTHEWS, J., not participating.

---

**4.** Since GAI did not even discover the existence of the allegedly negligent act prior to two years before filing its complaint, it is unnecessary for us to determine when GAI sustained actual damages.