**Karl B. CAMERON, Appellant
and Cross–Appellee,**

**v.**

**STATE of Alaska, Alaska Power Authority, Inc., and Ebasco Services, Inc., Appellees and Cross–Appellants.**

**Nos. S–3474, S–3510.**

Supreme Court of Alaska.

Dec. 20, 1991.

Rehearing Denied Jan. 27, 1992.

---

## OPINION

MATTHEWS, Justice.

 Karl B. Cameron appeals a judgment entered on statute of limitations grounds in favor of the State of Alaska, Alaska Power Authority, Inc., and Ebasco Services, Inc. (hereinafter "the State") and the award of costs to the State. We affirm. The State cross-appeals the trial court's determination *in limine* to prohibit Cameron's former wife from testifying concerning "any acts, words or conduct which occurred during the marriage." Because we have affirmed the dismissal of Cameron's claim, this issue is moot.

## FACTS [1]

From 1965 through 1983, Cameron worked as a miner digging tunnels. From late 1982 until September 1983, Cameron worked in tunnels excavated as part of the Terror Lake Hydroelectric Project in Kodiak. On four days in February 1983, Cameron was exposed to particularly heavy concentrations of rock dust, diesel exhaust, and dynamite-blasting by-products. During this heavy exposure, he had difficulty breathing. Cameron claims that there was continuous poor air quality in the tunnels while he worked on the Terror Lake Project. In October or November of 1983, Cameron first started having chronic difficulty in breathing. Cameron, who had suffered a back injury on the job and was not working at this time, attributed this difficulty to being out of shape and perhaps the cold weather.

Through February 1984, Cameron had "experienced a lot of problems with breathing," and his condition grew progressively worse. On February 27, 1984, when his condition had become "real severe," he went to see Dr. Norman J. Wilder, a pulmonary disease specialist. At that time, Cameron attributed his breathing problems to the working conditions in the tunnels at the Terror Lake Project. Cameron, in filling out the history portion of a "Physician's

William J. Soule, Law Office of William J. Soule, Anchorage, for appellant and cross-appellee.

Elliott T. Dennis, Pletcher, Weinig, Lottridge & Moser, Anchorage, for appellees and cross-appellants.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

1. On reviewing the grant of summary judgment, we draw inferences of fact from proof offered by the parties in favor of the non-moving party, and against the movant. *Nizinski v. Golden Valley Elec. Ass'n,* 509 P.2d 280, 283 (Alaska 1973).

Initial Report of Work Injury or Occupational Disease" form, responded to the question "Workman's Statement of Cause of Injury or Illness" as follows: "Powder Smoke from Rolling Rock Blast That Was Vented Through T.B.M. Heading." He also stated to Dr. Wilder that he thought his condition was caused by exposure to blasting fumes and rock dust in the tunnels.

In a deposition, Dr. Wilder stated:

Initially I found evidence to suggest bronchospasm, a respiratory distress I thought was probably asthma, and questioned a relationship to prior exposures. . . . *I could not be sure at the time* whether that tunnel experience is what led directly to his wheezing, led directly to his asthma or not. . . .

(Emphasis added.) It is not clear whether Cameron actually asked Dr. Wilder whether the exposure caused his breathing difficulties or if in fact anything was said about the subject.[2] In any case, Dr. Wilder indicated that at such an early point he would not have given a definitive response if Cameron had directly asked him if a causal relationship existed.

On March 7, 1984, Cameron learned from Dr. Wilder that he had asthma. Cameron had no further contact with Dr. Wilder until December 1984, at which time he was "back with severe wheezing." On January 18, 1985, Cameron completed a notice of injury to the State initiating a workers' compensation claim for his asthma condition.

Although the severity of his illness was at least partially masked by continuous treatment with steroids, Cameron's condition worsened over time. On May 7, 1985,

Dr. Wilder stated in a letter requested by Cameron that, "I feel there is more evidence to suggest Mr. Cameron's breathing difficulties [are] indeed a direct result of occupational exposure, [than] to take the opposite standpoint and say that he was destined to develop asthma anyway. . . ." In deposition testimony, Dr. Wilder indicated that he made the causal connection between Cameron's exposure and his breathing difficulties for the first time in the May 7 letter.

On March 14, 1986, Cameron filed his complaint *pro se*,[3] ten months after Dr. Wilder's May 7 letter, and more than two years after Cameron's initial visit to Dr. Wilder of February 27, 1984. The State moved for summary judgment seeking dismissal on statute of limitations grounds on January 20, 1989. The superior court granted the State's motion. The court determined that March 7, 1984, the date Cameron was advised by Dr. Wilder that he had a lung condition, was the date that Cameron's cause of action accrued. Taking that date as the date when the statute of limitations began to run, Cameron missed the filing deadline by only one week.

At a hearing to determine costs, Cameron objected to the taxation of certain costs on the grounds that they would not have been incurred if the State had promptly moved for summary judgment on statute of limitations grounds. Nevertheless, the costs were awarded.

DISCUSSION

I. Did the Court Err in Granting Summary Judgment on Statute of Limitations Grounds?

Both parties agree that AS 09.10.070 requires that Cameron's claim be brought

---

2. The questioning of Dr. Wilder leaves this point unclear:

Q: Would you have told Mr. Cameron that you didn't think that he was correct in his opinion as to the cause of [his breathing problems]?

. . . .

A: I *would* have been neutral. . . .

(Emphasis added.) The use of the subjunctive suggests that Dr. Wilder never told Cameron his opinion. On the other hand, in an April 4, 1986 letter to Cameron's attorney, Mr. Flanigan, Dr. Wilder stated that "[p]rior to [May or August of 1985], as my notes reflect, I did not make any

direct correlations with the patient, though I'm quite sure I would have discussed the possibility that [the tunnel fume exposures] might have been the cause of [Cameron's] difficulties." Thus, it is not clear what Dr. Wilder actually said to Cameron about the cause of his breathing difficulties.

3. The complaint alleged that the State was negligent in failing to provide Cameron with a safe workplace and strictly liable "because of the ultra-hazardous nature of the blasting activity that generated the fumes and gases that caused his injury."

within two years of the accrual of his cause of action. *See Yurioff v. American Honda Motor Co.,* 803 P.2d 386, 388 (Alaska 1990); *Silverton v. Marler,* 389 P.2d 3, 5 (Alaska 1964). Under the traditional, and at one time absolute,[4] "damages rule," accrual of a cause of action is established at the time of the injury. *Pedersen v. Zielski,* 822 P.2d 903, 906 (Alaska 1991); *Russell v. Municipality of Anchorage,* 743 P.2d 372, 375 (Alaska 1987) (citing *Gudenau & Co. v. Sweeney Ins.,* 736 P.2d 763, 766–67 (Alaska 1987)).

The "discovery rule" developed as a means to mitigate the harshness that can result from the damages rule's preclusion of claims where the injury provided insufficient notice of the cause of action to the plaintiff.[5] To accomplish this, the discovery rule balances two competing policies: the defendant's right to repose; and, the basic fairness of insuring a plaintiff's right to seek relief in court. *Hanebuth,* 694 P.2d at 146 (limitation period not intended to "be interpreted to reach unjust and absurd results").

The statute of limitations protects the defendant by limiting the time a plaintiff has to respond once the cause of action accrues. As a statute of repose, the statute of limitations "avoid[s] the injustice which may result from the prosecution of stale claims ... [and] protect[s] against the difficulties caused by lost evidence, faded memories and disappearing witnesses." *Haakanson v. Wakefield Seafoods, Inc.,* 600 P.2d 1087, 1090 (Alaska 1979) (quoting *Byrne v. Ogle,* 488 P.2d 716, 718 (Alaska 1971) and citing AS 09.10.010). The statute of limitations provides the plaintiff with a reasonable period in which to pursue and preserve the cause of action. Until the plaintiff is on notice of the cause of action, the plaintiff can neither pursue nor preserve it.

*Mine Safety Appliances Co. v. Stiles,* 756 P.2d 288 (Alaska 1988), sets forth an exposition of Alaska's discovery rule:

[T]he statute of limitations does not begin to run until the claimant discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action. *Hanebuth v. Bell Helicopter Int'l,* 694 P.2d 143, 144 (Alaska 1984). Thus we have said "the relevant inquiry is the date when [the claimant] reasonably should have known of the facts supporting her cause of action." *Russell,* 743 P.2d at 375. *See also Demoski v. New,* 737 P.2d 780, 788 (Alaska 1987); *Hazen v. Municipality of Anchorage,* 718 P.2d 456, 464 (Alaska 1986). We look to the date when a reasonable person has enough information to alert that person that he or she has a potential cause of action or should begin an inquiry to protect his or her rights. *Sharrow v. Archer,* 658 P.2d 1331, 1334 (Alaska 1983).

. . . .

... [When a person has] notice of facts " 'sufficient to prompt a person of average prudence to inquire,' ... [the person] should be deemed to have notice of all facts which reasonable inquiry would disclose." *Russell,* 743 P.2d at 376 (quoting

**4.** *See, e.g., Austin v. Fulton Ins. Co.,* 444 P.2d 536, 539 (Alaska 1968); *Prosser and Keeton on Torts,* § 30, at 165 (W. Keeton 5th ed. 1984).

**5.** *See, e.g., Hanebuth v. Bell Helicopter Int'l,* 694 P.2d 143 (Alaska 1984). Alaska adopted the discovery rule in *Greater Area Inc. v. Bookman,* 657 P.2d 828, 829–30 (Alaska 1982). *Cf. Van Horn Lodge, Inc. v. White,* 627 P.2d 641, 646 (Alaska 1981) (suggesting adoption of discovery rule).

*Bookman,* a legal malpractice case, relied heavily on the California Supreme Court's decision in *Neel v. Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal.3d 176, 98 Cal.Rptr. 837, 491 P.2d 421 (1971). *Neel* distinguished professional malpractice actions from "ordinary tort and contract actions," because of the problems in discovering the action and the relationship of trust between the professional and the client or patient. *Bookman,* 657 P.2d at 830 (quoting *Neel,* 98 Cal.Rptr. at 844, 491 P.2d at 428). *Hanebuth* held that the discovery rule applies outside the professional malpractice areas. 694 P.2d at 144 (citing *Stoleson v. United States,* 629 F.2d 1265, 1269 (7th Cir.1980)). Today, rather than characterize the discovery rule as a mitigating, pseudo-equitable doctrine, it is more appropriate to view it as specifying the meaning of "accrual" under the statute. The damages rule may be seen as simply a specific application of the discovery rule. That is, when an obvious injury occurs, a reasonable person is generally on notice of all the elements of the claim.

*Vigil v. Spokane County,* [42 Wash.App. 796] 714 P.2d 692, 695 (Wash.App.1986). *Id.* at 291–92.

This is a formulation of the discovery rule that will work for most, but not all cases. Most notably it mentions two accrual dates: (1) the date when plaintiff reasonably should have discovered the existence of all essential elements of the cause of action; and, (2) the date when the plaintiff has information which is sufficient to alert a reasonable person to begin an inquiry to protect his rights. The dates are different, since the point when the elements of a cause of action are discovered may come after and as a result of a reasonable inquiry. The inquiry, in turn, may be a time-consuming process.

In *Mine Safety* and in other cases,[6] we held that the inquiry notice date, rather than the date when the inquiry should have produced knowledge of the elements of the cause of action, was the date from which the statutory period began to run. *Id.* at 292. The *Mine Safety* formulation of the discovery rule therefore contains a seed which can produce unjust results. A reasonable inquiry, once triggered by inquiry notice, may not produce knowledge of the elements of a cause of action within the statutory period, or it may produce knowledge of the elements of a cause of action only relatively late in the statutory period. Either way it is possible that a litigant may be deprived of his right to bring a lawsuit before he has had a reasonable opportunity to do so.

In the case of *Palmer v. Borg–Warner Corp.,* 818 P.2d 632 (Alaska 1990), the argument was made that even though inquiry notice may have existed, the period of limitations should be tolled because the decedent's estate was barred by the National Transportation Safety Board from investigating the wreckage of the aircraft in which decedent was killed for some ten months after the accident. We held that the cause of action accrued on the inquiry notice date and that tolling was not required because the estate had a reasonable time for investigation after the release of the wreckage and before the statutory period ran. *Id.* at 636. We stated that if there had not been a reasonable time to investigate, the limitations period would be tolled:

We similarly reject the Palmer estate's argument that the statute must be tolled because it had no "legal access" to the wreckage while the NTSB was conducting its investigation and that this fact necessarily requires the limitations period to be tolled. The limitations period runs from the date of inquiry notice. Inaccessibility would persuade us to toll the limitations period where the claimant does not have a reasonable time in which to investigate and file his cause of action. . . .

In this case, however, it cannot be said that the Palmer estate did not have a "reasonable opportunity" to bring suit against Borg–Warner within two years from the date Mrs. Palmer learned of the accident. Even assuming that the NTSB investigation precluded the estate's own investigation efforts, the estate still had fourteen months after the NTSB released the wreckage to conduct its own investigation into the cause of the crash before the limitations period expired.

*Palmer,* 818 P.2d at 636 (footnotes omitted).

■ Taking *Palmer* and *Mine Safety* together, it seems accurate to express our discovery rule as follows:

(1) a cause of action accrues when a person discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action;

(2) a person reasonably should know of his cause of action when he has sufficient information to prompt an inquiry into the cause of action, if all of the essential elements of the cause of action may reasonably be discovered within the statutory period at a point when a reasonable time remains within which to file suit.

---

**6.** *E.g., State, Dep't of Corrections v. Welch,* 805 P.2d 979 (Alaska 1991); *Yurioff,* 803 P.2d at 389–90; *Russell,* 743 P.2d at 375.

In another recent case, *Pedersen v. Ziel-ski*, 822 P.2d 903, (Alaska 1991), we addressed another aspect of the *Mine Safety* exposition of the discovery rule. Pedersen was on inquiry notice and conducted an investigation in order to attempt to discover the cause of his paralysis. We focused on the language that he "should be deemed to have notice of all facts which reasonable inquiry would disclose." *Id.* at 908 (quoting *Mine Safety*, 756 P.2d at 292); *Welch*, 805 P.2d at 982. If reasonable inquiry would have disclosed the cause of his paralysis within two years after inquiry notice then Pedersen was barred. His inquiry, however, did not produce such knowledge within the two-year period. We considered the question whether "reasonable inquiry" in the *Mine Safety* formulation required us to ask whether a reasonable inquiry in the abstract would have produced knowledge of the cause of action within two years or whether the relevant question was whether Pedersen's inquiry was reasonable. We made the choice of the latter, stating:

> There is a difference between asking whether a reasonable inquiry would have produced knowledge, and whether a plaintiff's particular inquiry—which was unproductive—was reasonable. Putting the question in the abstract tends to place the focus on an ideal inquiry, whereas in reality there may have been several possible reasonable courses of inquiry, some of which would be productive and some of which would not be productive. Where the plaintiff actually attempts an inquiry, the fairer question in our view, is to ask whether his inquiry was reasonable. Where there is no attempt, however, there is no choice but to put the question in the abstract.

*Pedersen*, 822 P.2d at 908. We held in *Pedersen* that there was a question of fact as to whether Pedersen's inquiry was reasonable. If his inquiry was found to be reasonable, we stated that

> the statute of limitations should not accrue until he received actual knowledge of the cause of his paralysis or he received new information which would prompt a reasonable person to inquire

further. If his inquiry was not reasonable, the cause of action should accrue at the inquiry notice point unless a reasonable inquiry would not have been productive within the statutory period.

*Id.* at 908.

■ Thus, *Pedersen*, when combined with *Palmer*, added a third part to our discovery rule: where a person makes a reasonable inquiry which does not reveal the elements of the cause of action within the statutory period at a point where there remains a reasonable time within which to file suit, the limitations period is tolled until a reasonable person discovers actual knowledge of, or would again be prompted to inquire into, the cause of action. *Pedersen*, 822 P.2d at 908.

■ Applying these principles to the facts of this case, we agree with the trial court that Cameron was on inquiry notice at least by March 7, 1984. As the trial court, quoting *Mine Safety*, 756 P.2d at 291, said:

> A reasonable person, after learning he had a medically documented lung condition which he believed was related to having been exposed to blasting fumes would have been alerted that he had "... a potential cause of action or should begin an inquiry to protect his rights."

Cameron made an inquiry by consulting Dr. Wilder on February 27, 1984; the inquiry was not productive in that it did not reveal the cause of Cameron's condition until May 7, 1985. Since the original inquiry notice may be fixed no later than March 7, 1984, Cameron had some ten months after learning of the cause of his disability within which to file suit before the statute of limitations ran.

■ As we have noted, where an injured person reasonably should discover all the essential elements of his claim, only at a point relatively late in the statutory period, when the person "does not have a reasonable time in which to investigate and file his cause of action" the limitations period is tolled. *Palmer*, 818 P.2d at 636. The same rule logically should apply where, as here, the injured person makes an inquiry

which ultimately reveals the elements of the cause of action within the statutory period.

■ The question, therefore, in this case is whether ten months was a reasonable time for Cameron to investigate and file his claim. In our view, this question must necessarily be answered in the affirmative.[7] When Cameron, on May 7, 1985, received knowledge of the cause of his condition he had already filed a workers' compensation claim. No reason is suggested indicating that a civil action for damages could not have been properly prepared and filed within the ensuing ten months.

II. Did the Trial Court Abuse its Discretion by Not Limiting the State's Costs to Those Which Would Have Been Incurred if the State had Filed an Earlier Motion for Summary Judgment?

■ According to Cameron, the State waited an unreasonable length of time before filing a motion for summary judgment and thereby incurred many unnecessary expenses which the superior court ultimately assessed against Cameron.

Cameron claims that "[a]n attorney can easily tell by reference to a calendar whether or not the complaint has been filed within the limits imposed by [law]." As this case shows, unfortunately this is not always true. There has been uncertainty as to the application of the discovery rule and it is often necessary to conduct discovery to determine whether a claim is barred. The trial court did not abuse its discretion by refusing to limit allowable costs.

AFFIRMED.

COMPTON, Justice, concurring.

I agree that the judgment of the superior court should be affirmed. However, the affirmance should be on a straight forward application of *Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288 (Alaska 1988).

In *Greater Area Inc. v. Bookman*, 657 P.2d 828, 829 (Alaska 1982), we adopted the so called "discovery rule" to determine when a cause of action accrues:

According to the best formulation of [the discovery] rule, the statute of limitations does not begin to run until the client discovers, or reasonably should discover, the existence of all the elements of his cause of action.

(Citation omitted).

*Mine Safety*, a products liability case, reaffirmed this "best formulation" of the discovery rule. It begins our analysis: "The statute of limitations does not begin to run until the claimant discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action." *Mine Safety*, 756 P.2d at 291 (citing *Hanebuth v. Bell Helicopter Int'l*, 694 P.2d 143, 144 (Alaska 1984)). The language of *Hanebuth* ("the existence of all elements essential to the cause of action") is slightly different from that in *Bookman* ("the existence of all the elements of [the] cause of action"), but the difference is irrelevant; the phrases have the same meaning.

*Mine Safety* resulted in the following conclusion:

It is uncontroverted that Stiles knew he was hit in the head while wearing a safety helmet designed to protect against such blows. The helmet cracked and the suspension clips broke on impact. Parker [Drilling Company] investigated the accident and the result of that investigation was available to Stiles shortly after the accident. In addition, Parker's safety officer kept the helmet for two years where it was available for inspection. These facts were available to Stiles the day of the accident. (Footnote omitted). We conclude that under these circumstances a reasonable person would have notice of facts " 'sufficient to prompt a person of average prudence to inquire,' and thus [the person] should be deemed to have notice of all facts which reason-

---

**7.** "Where ... there exist uncontroverted facts that determine when a reasonable person should have been on inquiry notice, 'we can resolve the question as a matter of law.'" *Palmer*, 818 P.2d at 634 (quoting *Mine Safety*, 756 P.2d at 292).

able inquiry would disclose." (Citations omitted).

*Mine Safety*, 756 P.2d at 292. The *Bookman* rule was applied: Stiles knew all of the elements of his cause of action, which should have prompted him to inquire.

No case following *Bookman* has ever explicitly declared that the discovery rule it adopted has been modified in any respect. Instead, we are now told that the discovery rule formulated in *Mine Safety* contemplates two separately identifiable accrual dates.[1] I do not agree. As I analyze *Mine Safety* and other cases dating back to *Bookman*, discovery of all the elements of (or "all elements essential to") the cause of action provides a claimant with knowledge sufficient to prompt a person of average prudence to inquire. At this point we deem the claimant to have notice of all facts which a reasonable inquiry would disclose. *Mine Safety*, 756 P.2d at 292 (citing *Russell v. Municipality of Anchorage*, 743 P.2d 372, 376 (Alaska 1987)).[2]

1. The "other cases" the court cites in support of its assertion that we have applied an inquiry notice date other than the date the claimant has 'knowledge of the elements of the cause of action' do not all stand up on close examination. In *State v. Welch*, 805 P.2d 979, 981–82 (Alaska 1991), we stated:

> The law to be applied to this case is the so called "discovery rule," which holds that a statute of limitations does not begin to run until a plaintiff "discovers, or reasonably should discover, the existence of all the elements of his cause of action." (Citation omitted).
> . . . .
> Viewing the evidence in the light most favorable to the parents, we conclude that reasonable minds could not differ on whether the parents were on inquiry notice prior to January 12, 1987. On the basis of the uncontroverted facts, a reasonable person *should have known of a potential claim* against the state substantially prior to that date. Therefore, suit filed January 12, 1989, is barred by AS 09.55.580(a).

(Footnote omitted, emphasis added).

As I read *Welch*, discovery of 'all the elements' and knowledge of a 'potential claim' are used interchangeably. However, it is clear to me that the court interprets 'potential cause of action' as meaning something different than 'all the elements.' I do not agree, as I have previously stated. *Pedersen v. Zielski*, 822 P.2d 903, (Alaska 1991) (Compton, Justice, dissenting). *Yurioff v. American Honda Motor Co.*, 803 P.2d 386, 389–90 (Alaska 1990), presents a similar equating of terms:

> Under the rule in *Stiles*, the statute began to run when Yurioff reasonably should have begun an inquiry to protect his rights. It is enough that Yurioff knew that the ATV malfunctioned and an accident ensued; it is not necessary that he have actual knowledge or evidence that the throttle was the cause of the malfunction. By his own testimony, Yurioff was aware of both the malfunction and his injury on the day of the accident. We hold that the discovery rule did not toll the statute while Yurioff was bedridden.
> Yurioff had knowledge of the elements essential to a *products liability* cause of action on the date of injury. His products liability case was dismissed.

*Russell v. Municipality of Anchorage*, 743 P.2d 372 (Alaska 1987), does not make reference to protecting one's rights. Rather, after quoting a discussion of our adoption of the discovery rule from *Gudenau & Co., Inc. v. Sweeney Insurance, Inc.*, 736 P.2d 763, 766–67 (Alaska 1987), we concluded that "the superior court correctly determined that Russell should have known of the existence of the facts alleged as comprising her cause of action in 1983." *Id.* at 375. We went on to remark that "[o]rdinarily summary judgment would be inappropriate and a remand to the superior court would be required. (Footnote omitted). If, however, there are uncontroverted facts that indicate when Russell reasonably should have known that she had a cause of action, then this court can dispose of the question as a matter of law." *Id.* at 375–76.

2. In *Mine Safety*, 756 P.2d at 291 (Alaska 1988), we remarked that "[w]e look to the date when a reasonable person has enough information to alert that person that he or she has a potential cause of action or should begin an inquiry to protect his or her rights." The language comes from *Sharrow v. Archer*, 658 P.2d 1331, 1334 and n. 5 (Alaska 1983):

> The fact that the Sharrows had not been informed of the "wrong" by the "wrongdoer" or were not convinced that there was "proof" of the wrong or aware of "sworn testimony and documentary evidence" substantiating it does not establish that a reasonable person would be unaware of the wrong or the wrongdoing.[5]
> 5. In *Tobacco & Allied Stocks, Inc. v. Transamerica Corp.*, 244 F.2d 902 (3d Cir. 1957), the court rejected a claim by plaintiffs that laches should not attach until the district court in a prior case had issued its opinion finding fraud: "To have such knowledge of fraud as will begin the operation of laches, however, a legal adjudication of the question of fraud is hardly necessary. It is sufficient if facts come to plaintiff's attention that would warrant the inferences which reasonable men would draw, and that would put reasonable men on inquiry to protect their rights." *Id.* at 904.

Furthermore, we are told that *Pedersen v. Zielski*, 822 P.2d 903, (Alaska 1991), "added a third part to our discovery rule...." at 1367. I suggest that *Pedersen* did not add a third part to our discovery rule; it added an additional accrual rule.

If the presentation of the law here proffered by the court is correct, the "best formulation" of the discovery rule we identified in *Bookman* is now but one of several separate rules used to determine when a cause of action accrues.

At a medical appointment on February 27, 1984, Cameron "attributed his breathing problems to his working conditions in the tunnels at the Terror Lake Project and he knew he had breathing problems." He knew by then that he had been damaged. He knew also the identity of the potential defendants. He had complained to others about working conditions in the tunnel. In short, by February 27 Cameron had sufficient information to alert a reasonable person to the fact that "he ... [had] a potential cause of action," that is, he had discovered all elements essential to his cause of action. This information was sufficient to prompt a prudent person to then inquire into facts which would tend to establish a sufficient basis to support filing a cause of action.

A reasonable inquiry by Cameron would have disclosed facts tending to establish a sufficient basis to support filing a cause of action, within the time permitted by the statute of limitations to bring the action. Indeed, significant additional facts were disclosed by May 7, 1985, as Dr. Wilder's letter to Cameron's attorney establishes. It is not necessary that a potential plaintiff understand the technical nature of his or her claim, or the precise facts that will be introduced at a trial, to have a sufficient basis for filing suit. *See, e.g., Mine Safety*, 756 P.2d at 291; *Sharrow v. Archer*, 658 P.2d 1331, 1334 (Alaska 1983). Cameron's cause of action accrued on February 27,

1984, more than two years before he filed suit. His action is barred by AS 09.10.070.

The legislature has determined reasonable time limits within which actions are to be brought. It is within the province of this court to establish rules to determine *when* the time limits *commence*. It is not within the province of this court to determine *whether* the time limits are *reasonable*. Thus it is neither our right nor our responsibility to determine "whether ten months was a reasonable time for Cameron to investigate and file his claim."

The substantial *dicta* in the court's opinion can serve only to further confuse an issue already complicated by *Palmer v. Borg-Warner Corp.*, 818 P.2d 632 (Alaska 1990), and *Pedersen v. Zielski*. These newly evolving accrual rules, added to the long standing *Bookman* rule, will reduce to guesswork the determination of when an action must be commenced, a result which does not serve any affected interests.

---

To say that a person should begin an inquiry to protect his or her rights is not different from saying that a person is aware of "the wrong or the wrongdoing." The date a claimant is alerted to the fact that "he or she has a potential cause of action" and the date a claimant must "begin[ ] an inquiry to protect his or her rights" are not different dates.