Sarah D. CROFT, a Minor Child by Stephen and Gale CROFT, her guardians and next friends, and Stephen and Gale Croft, Petitioners,

v.

Michael WICKER, Respondent.

Stephen CROFT, Petitioner,

v.

Michael WICKER and D.R. Kimbrell d/b/a Kimbrell's Welding Service, Respondents.

No. S–1686.

Supreme Court of Alaska.

May 22, 1987.

Robert Merle Cowan, Kenai, for petitioners.

Arthur S. Robinson, Robinson & Beiswenger, Soldotna, for respondent, Michael Wicker.

No appearance on behalf of D.R. Kimbrell d/b/a Kimbrell's Welding Service.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

COMPTON, Justice.

### OPINION

This is a petition for review of an order of the superior court granting Michael Wicker's motion to dismiss those portions of the petitioners' counterclaim and complaint claiming causes of action for both intentional and negligent infliction of emotional distress.

For the reasons that follow, we reverse the judgment of the superior court.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Wicker filed suit for infliction of emotional distress, wrongful discharge, and breach of contract, claiming that Stephen Croft behaved outrageously in terminating Wicker's employment after Wicker allegedly molested the Croft's 14–year old daughter, Sarah.

Sarah, Stephen and Gale Croft thereafter filed a complaint against Wicker alleging damages to them which in part were based on theories of assault and emotional distress. At the same time, Stephen and Gale Croft, in the first action, filed a counterclaim alleging the same damages with regard to themselves which they alleged in their complaint. Wicker filed motions to dismiss those counts of the complaint and the counterclaim which pertained to the parents' damages. The trial court ordered that the two cases be consolidated, and later entered an order granting Wicker's motions to dismiss.

The Crofts' counterclaim and complaint allege as follows: That on or about October 12, 1985, Wicker visited the Crofts' home and took Sarah Croft for a ride on his three-wheeler; that both Stephen and Gale Croft (the parents) were present when Wicker left on the three-wheeler with their daughter Sarah; that the defendant intentionally touched Sarah in a sexual manner while riding behind her on the three-wheeler; that the Crofts were in close proximity when Wicker sexually assaulted Sarah and witnessed their daughter's extreme emotional distress, and consequently suffered emotional distress themselves.

Stephen Croft, who was Wicker's welding supervisor at Kimbrell's Welding Service (Kimbrell), was permitted by Kimbrell to terminate Wicker's employment.

### DISCUSSION

### II. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

The Crofts urge this court to recognize that the circumstances of this case give

rise to liability under the principle of *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), adopted by this court in *Tommy's Elbow Room v. Kavorkian,* 727 P.2d 1038 (Alaska 1986).

In *Kavorkian,* we recognized a bystander's right to recover damages for negligent infliction of emotional distress caused by injury to another. We adopted the *Dillon* guidelines for determining whether the risk of harm to the plaintiff was reasonably foreseeable to the defendant, thus creating a duty of due care. These guidelines are:

> (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

727 P.2d at 1041, *quoting Dillon v. Legg,* 441 P.2d at 920.

We further stated:

> [W]e join the jurisdictions which had [sic] adopted the *Dillon* guidelines and agree with the more liberal interpretation of those guidelines. The touchstone of *Dillon* is not a rigid requirement of sensory and contemporaneous observance of the accident, but rather is the reasonable foreseeability that the plaintiff-witness would suffer emotional harm.

*Id.* at 1043.

In *Kavorkian,* an intoxicated driver struck the car in which the plaintiff's daughter was a passenger. The plaintiff and his daughter had attended a meeting together and she had left before him. On his way home, the plaintiff passed the scene of the accident, but did not know his daughter was involved. Upon his arrival home, he found that his daughter had not yet arrived, and he went back to the accident scene. There he saw police and medical technicians attempting to remove his daughter from a car. *Id.* at 1040.

We recognized that under a strict application of the *Dillon* guidelines, the plaintiff in *Kavorkian* could not recover because he had not actually observed the tortious event. *Id.* at 1041. We concluded, however, that it was not necessary for the plaintiff to have witnessed the tortious event. We found that "[u]pon arriving at the scene, ... he perceived and suffered shock from observing his child's injury.... We cannot say as a matter of law that it was not reasonably foreseeable that he would appear at the scene of the accident." *Id.* at 1043.

### It Was Reasonably Foreseeable that Wicker's Acts Would Cause Emotional Harm to Crofts

The Crofts meet the first and third prongs of the *Dillon* test adopted in *Kavorkian:* They were located near the scene of the tortious event and they are closely related to the victim. Our focus, therefore, is on the requirement of a direct emotional impact from the sensory and contemporaneous observance of the event. *Kavorkian* holds that this factor is only a guideline for determining foreseeability of harm to the plaintiffs. We relied on *Ochoa v. Superior Court,* 39 Cal.3d 159, 216 Cal.Rptr. 661, 703 P.2d 1 (1985), *Nazaroff v. Superior Court,* 80 Cal.App.3d 553, 145 Cal.Rptr. 657 (1978), *Archibald v. Braverman,* 275 Cal.App.2d 253, 79 Cal.Rptr. 723 (1969) and cases from other jurisdictions which permitted recovery for emotional distress in situations where the *Dillon* guideline of contemporaneous observation of the tortious event was not met. *See Kavorkian,* 727 P.2d at 1041–42 and n. 4.

In *Ochoa,* parents witnessed the neglect of their ill son by the medical personnel of a juvenile hall infirmary which resulted in the son's death. 703 P.2d at 3–4. The California Supreme Court held that the *Dillon* guidelines did not require emotional distress to be caused by a brief and sudden occurrence viewed contemporaneously by the plaintiff in order to be compensable. *Id.* at 7.

In *Nazaroff,* a mother was looking for her three-year old son. She heard a neighbor scream his name and she immediately

knew that her son had gotten into her neighbor's pool and was hurt. She arrived on the scene in time to see her missing son pulled from the pool and efforts made to resuscitate him. He died some days later. 145 Cal.Rptr. at 659. The *Nazaroff* court concluded that there were triable issues of fact as to whether the alleged harm to the mother resulted from an emotional shock caused by the direct emotional impact from the contemporaneous observation of the immediate consequences of the defendant's negligent act causing the injury and death of her son. *Id.* at 664.

In *Archibald* a mother came upon her child moments after he had been injured in an explosion. 79 Cal.Rptr. at 723–24. The court observed that the shock of seeing a child severely injured immediately after the tortious event may be just as profound as that experienced in witnessing the accident itself, and that therefore the plaintiff had met the contemporaneous observance requirement. *Id.* at 725.

*Kavorkian* also cites cases from other states, involving plaintiff bystanders, closely related to victims of negligently inflicted injury or death, where recovery was permitted despite the fact that the second prong of the *Dillon* guidelines was not explicitly met. *See Kavorkian*, 727 P.2d at 1042 n. 4.

■ Viewing the Crofts' allegations as true, as we must in reviewing an Alaska Civil Rule 12(b)(6) ruling, *Shooshanian v. Wagner*, 672 P.2d 455, 461 (Alaska 1983), concededly the Crofts did not sensorily and contemporaneously observe the incident of sexual assault alleged here. Our discussion of *Kavorkian* and the other cases cited makes clear, however, that it is the reasonable foreseeability to the defendant of harm to the plaintiff that generates the defendant's duty to exercise reasonable care. Here, the facts evince that the Crofts were in close proximity to Wicker and Sarah when the alleged incident occurred. They observed her extreme distress just after the alleged assault occurred. We cannot say that it was not reasonably foreseeable to Wicker that Sarah's parents would be in close proximity

and therefore harmed by his actions. The alleged incident occurred during a visit Wicker made to their home. Sarah is a youth who would naturally seek the consolation of her parents under such circumstances as are alleged to have occurred here. Under these circumstances, we conclude that the Crofts have stated a cause of action for negligent infliction of emotional distress sufficient to present their claim to a jury.

### III. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ The Crofts argue that they have stated a cause of action for intentional infliction of emotional distress. In *Richardson v. Fairbanks North Star Borough*, 705 P.2d 454, 456 (Alaska 1985), we adopted the Restatement (Second) of Torts § 46(1) (1965), which provides:

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

In *Richardson*, this court denied recovery under this theory to plaintiffs who sought damages against the borough for emotional distress they sustained when their dog was killed by an employee of the borough animal shelter in violation of the shelter's policy. 705 P.2d at 455. Today we extend this doctrine and hold that a third person who is foreseeably harmed by extreme and outrageous conduct may state a cause of action for intentional infliction of emotional distress. Applying this rule to the instant case, we find that the Crofts have stated such a claim.

In *Richardson*, recovery was denied not because we do not recognize that the loss of a pet can be especially distressing under egregious circumstances, but rather because in that case the plaintiffs' offer of proof as to the severity of their emotional distress was, as a threshold matter, insufficient. 705 P.2d at 456–57.

We regard the facts of the instant case as being more egregious than those in *Richardson*. Again viewing the facts as

true, *Shooshanian*, 672 P.2d at 461, Wicker's alleged conduct was the intentional sexual abuse of a minor child while a guest at her parents' home, with full knowledge that they were in close proximity of the incident. The Restatement (Second) of Torts § 46 states:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim "outrageous!"

Restatement (Second) of Torts § 46 (1965), comment d.

Wicker's alleged intentional behavior was not a simple annoyance or insult. It did not result in mere insult or indignity. It was, rather, the very brand of behavior which our society labels "outrageous." We conclude that the Crofts have stated a cause of action for intentional infliction of emotional distress.

## IV.  CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the superior court and REMAND for proceedings not inconsistent with this opinion.