Lorraine F. PALMER and Edward E. Dillon, Jr., personal representatives of the Estate of Merrett P. Palmer, Appellants,

v.

BORG–WARNER CORPORATION and its Division Marvel–Schebler/Tillotson, Facet Aerospace Products Company and Facet Enterprises, Inc.; and Edward DePriest, Appellees.

No. S–3318.

Supreme Court of Alaska.

Nov. 16, 1990.

Rehearings Denied Oct. 28 and Nov. 25, 1991.

Steven D. Smith, Smith, Coe & Patterson, Anchorage, for appellants.

David T. Hunter, Lane Powell & Barker, Anchorage, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

The issue presented on appeal is whether the superior court properly granted summary judgment in favor of Borg–Warner, an airplane engine component manufacturer, based on its conclusion that the two-year statute of limitations, AS 09.55.580(a), barred a wrongful death claim brought by the estate of a passenger killed in an airplane crash. Specifically, we must decide whether the personal representatives of the estate had notice of a potential claim against Borg–Warner more than two years before filing their complaint. We conclude, as did the superior court, that the complaint was untimely. Thus, we affirm.

### I

On September 8, 1986, a Piper aircraft crashed, in the Brooks Range, roughly thirty miles south of Umiat. Both the pilot, Kenneth Swanson, and his passenger, Merrett Palmer, were killed. It is undisputed that Palmer's widow was informed of her husband's death on September 11, 1986.[1] On October 1, 1986, the aircraft's engine was removed by helicopter from the scene of the crash and later transported to Fairbanks. The National Transportation Safety Board (NTSB) commenced an investigation as to the cause of the crash and issued its findings in July of 1987. The NTSB ultimately concluded that there was probable cause to believe the crash occurred due to pilot error.

The NTSB report also indicated that "[t]he engine teardown revealed only impact and fire damage." On July 30, 1987, the personal representatives for Palmer's estate filed a wrongful death action against the estate of the aircraft's pilot, Kenneth Swanson. On September 7, 1988, one day

before the second anniversary of the crash, Swanson's estate filed suit against the manufacturer of the airplane engine, Borg–Warner, specifically alleging that a defective carburetor caused the crash. The Palmer estate filed suit against Borg–Warner on September 20, 1988, two years and nine days after learning of the accident.

In December 1988, Borg–Warner moved for summary judgment against the Palmer estate, arguing that the estate suit for wrongful death was barred by the two-year statute of limitations. The Palmer estate opposed the motion and, in January 1989, filed its own motion for partial summary judgment, arguing that "[a]s of September 20, 1986, Plaintiffs did not know, nor could they have reasonably been expected to know, that the carburetor of the aircraft ... may have been defective." The estate claimed that its suit against the manufacturer was, therefore, timely. The superior court granted summary judgment for Borg–Warner, ruling the claim time-barred as a matter of law. The Palmer estate appeals.

### II

#### A

■ The period of limitations for wrongful death suits in Alaska is two years. AS 09.55.580(a). If applied literally such period would run from the day of death, in this case September 8, 1986.[2] *See Gudenau & Co. v. Sweeney Insurance*, 736 P.2d 763, 766 (Alaska 1987) ("Older cases applied this rule literally to bar any action initiated more than two years after the plaintiff ... was tortiously damaged."); *see also Russell v. Municipality of Anchorage*, 743 P.2d 372, 375 (Alaska 1987) (statute of limitations normally begins to run on the date the plaintiff suffers the injury). We have,

---

1. The widow apparently submitted an affidavit indicating that she first had notice of her husband's death on September 10. Neither party, however, disputes the finding by the superior court that she had such notice on September 11, and, for purposes of this appeal, we will consider the later date controlling.

2. AS 01.10.080 provides that a legal time period such as a statute of limitations, is to be "computed by excluding the first day and including the last." *See also* Alaska R.Civ.P. 6(a) ("[T]he day of the act, event, or default from which the designated period of time begins to run is not to be included."). The statute of limitations in this

however, in the context of tolling statutes of limitation, adopted the discovery rule[3] which applies in cases where the plaintiff lacks immediate notice of a claim. Under the rule, the limitations trigger date is the "date when a reasonable person has enough information to alert that person that he or she has a potential cause of action or should begin inquiry to protect his or her rights." *Mine Safety Appliances v. Stiles*, 756 P.2d 288, 291 (Alaska 1988); (citing *Sharrow*, 658 P.2d at 1334). In *Hanebuth v. Bell Helicopter Int'l*, 694 P.2d 143, 146 (Alaska 1984), we held that the discovery doctrine applies to Alaska's wrongful death statute.

In the case at bar, the trial court, in granting summary judgment, ruled that

> the statute of limitations should run from, at the latest, September 11th, 1986. That was the date when the potential plaintiffs were notified of the death as well as discovery of the wreckage. They had an obligation and duty from that point in time to investigate in a meaningful manner any potential [defendants].

When reviewing a grant of summary judgment, our duty is to determine whether there was a genuine issue of material fact and whether the moving party was entitled to judgment on the law applicable to the established facts. *Mine Safety*, 756 P.2d at 291; *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985). Ordinarily, summary judgment is an inappropriate means of ascertaining when a statute of limitation commences. *Mine Safety*, 756 P.2d at 292; *Russell*, 743 P.2d at 375–76 & n. 11 (Alaska 1987). Where, however, there exist uncontroverted facts that determine when a reasonable person should have been on inquiry notice, "we can resolve the question as a matter of law." *Mine Safety*, 756 P.2d at 292.

■ We affirm the trial court. A careful reading of *Mine Safety* establishes

that, upon notification of injury or death, the claimant or estate has an affirmative duty to investigate *all* potential causes of action before the statute of limitations expires. *See Mine Safety*, 756 P.2d at 292 (the facts concerning the nature of the injury, knowledge of the whereabouts of the defective product, and the existence of an investigative report about the incident were available to the claimant the day of the accident; the claimant had knowledge of enough facts to prompt a reasonable person to investigate shortly after the accident).

■ Upon notification of an airplane crash, a reasonable person has, as a matter of law, enough information to be alerted that she "should begin an inquiry" concerning a potential cause of action against the pilot, the carrier or the manufacturer. *See Reiterman v. Westinghouse, Inc.*, 106 Mich.App. 698, 308 N.W.2d 612, 614 (1981) ("as a matter of law ... where a product is the instrumentality of death the fact that the product may have been defective has been manifested. It is then incumbent upon the survivors to investigate the product to determine liability."). "[T]he general safety record of air travel and the present state of air technology compel us to conclude that air crashes do not normally occur absent negligence, even in inclement weather." *Widmyer v. Southeast Skyways, Inc.*, 584 P.2d 1, 14 (Alaska 1978). If inquiry, diligently pursued, would have revealed sufficient information to justify filing within the two-year limitations period, we see no basis for equitably tolling the statutory time limitation.

■ Thus, the Palmer estate reasonably should have known from the date of being informed of the crash that potential claims existed against the pilot, the carrier, or the manufacturers. The estate was notified of Palmer's death in the plane crash on September 11, 1986. The limitations period began on that date.[4] The complaint

---

case, therefore, would actually have begun to run on September 9, 1986, the day following the day of Palmer's death.

**3.** *Greater Area Inc. v. Bookman*, 657 P.2d 828, 829 (Alaska 1982); *see also Sharrow v. Archer*, 658 P.2d 1331, 1333 (Alaska 1983).

**4.** In dissent, Justice Compton argues that "[i]t simply cannot be said that Palmer reasonably should have known of a possibly defective carburetor before ... September 30th." Dissent (emphasis omitted). This ignores the true focus of this case: we do not insist that a claimant

against Borg–Warner was filed on September 20, 1988, nine days after the limitations period expired.

Our holding is consistent with our prior decisions. In *Gudenau,* we reasoned that the insured was alerted to a potential cause of action against his insurance broker upon learning that the insurer refused to pay on a claim. *Gudenau,* 736 P.2d at 767. Because the insured failed to diligently pursue this claim once reasonably alerted, we held that the claim, filed outside the statute of limitations, was time-barred. *Id.* at 767–68. The same reasoning applies here. The estate was reasonably alerted to its potential causes of action upon notification of the crash.

In *Russell,* we held that an applicant to the police academy reasonably should have known of the facts supporting her sex discrimination claim against the municipality the moment she was *informed* by the department that she was "a minority bump." *Russell,* 743 P.2d at 375–76. The case at bar presents a similar scenario. The estate was apprised of the potential for a cause of action against Borg–Warner. The limitations clock started on that date.

Our decision is also consistent with an analogous decision from Illinois, another jurisdiction in which the discovery rule is applicable to wrongful death actions. *Praznik v. Sport Aero, Inc.,* 42 Ill.App.3d 330, 355 N.E.2d 686 (1976). In *Chicago & Southern Airlines v. Volpar, Inc.,* 54 Ill. App.3d 609, 12 Ill.Dec. 431, 432, 370 N.E.2d 54, 55 (1977), where a plane crashed when its landing gear collapsed while landing, the court held that "[u]ntil the date of the crash, plaintiffs had no opportunity to know of the alleged defective condition of the landing gear.... [Thus the] statute of limitations ... began to run on the date of the collapse, which is when plaintiffs knew or should have known of the alleged defect." Like the plaintiffs in *Volpar,* the plaintiffs in the case at bar could not know of a defective carburetor until the crash. Once informed of the crash, the plaintiffs were alerted to all the facts necessary to start investigating a potential cause of action based upon possible mechanical defects. *See also Reiterman,* 308 N.W.2d at 614.

### B

The Palmer estate argues that it did not have notice of its claim against the engine manufacturer until July 1987. This argument is based on two theories: (1) that the estate relied on the NTSB's initial reports and findings that the crash was caused by pilot error and, therefore, the estate had no notice or reason to suspect there may have been engine failure, and (2) the estate had no legal right of access to the wreckage until after the NTSB conducted its investigation.

We reject the estate's contention that its reliance upon the NTSB report operates to preclude application of the statute of limitations on these facts. The NTSB investigation was not undertaken for the benefit of the estate, and its purpose was not to identify potential tortfeasors.

actually know the precise cause at the time of the injury, rather we conclude that a claimant must begin an inquiry as to the cause of injury promptly and diligently once it is apparent that an injury has occurred due to the possible negligence of another.

We simply emphasize that failure to exercise diligence in investigating a crash is no cause to equitably toll the statute. Such dilatory conduct is done at the risk of being precluded from bringing suit. Justice Compton's argument was rejected in *Pocono Int'l Raceway v. Pocono Produce,* 503 Pa. 80, 468 A.2d 468, 471 (1983) ("the statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations") (citations omitted); *Arrowood v. General Motors Corp.,* 539 F.2d 1321, 1325 (4th

Cir.1976); and *Szlinis v. Moulded Fiber Glass Cos.,* 80 Mich.App. 55, 263 N.W.2d 282, 287 (1977). Further, Justice Compton's approach passes over the intended application of the discovery rule. The doctrine tolls the statute "until the plaintiff has in fact discovered that he has suffered injury, or by the exercise of reasonable diligence should have discovered it." W. Keeton, D. Dobbs, R. Keeton, & R. Owen, *Prosser & Keeton on The Law of Torts* § 30, at 166 (5th ed. 1984). The Palmer estate fails on both counts: first, the injury was "discovered" on September 11, 1986, when the widow was informed of her husband's death. Second, the estate failed to exercise "reasonable diligence" when it neglected to promptly investigate the possibility of engine failure. But for the pilot's estate filing suit against Borg-Warner, the Palmer estate, by its own admission would never have pursued this claim.

NTSB accident investigations are undertaken to determine whether air safety regulations and procedures were complied with and to identify, if possible, the probable cause of the crash. *See* 49 U.S.C.App. § 1441(a). These goals do not include identifying negligence for purposes of tort liability. Moreover, NTSB reports are precluded from admissibility in civil suits for damages. *See* 49 U.S.C.App. § 1441(e); *Curry v. Chevron, USA,* 779 F.2d 272, 274 (5th Cir.1985); *Travelers Insurance Co. v. Riggs,* 671 F.2d 810, 816 (4th Cir.1982). *See also Beech Aircraft Co. v. Harvey,* 558 P.2d 879, 882 (Alaska 1976).

■ We similarly reject the Palmer estate's argument that the statute must be tolled because it had no "legal access" to the wreckage while the NTSB was conducting its investigation and that this fact necessarily requires the limitations period to be tolled.[5] The limitations period runs from the date of inquiry notice. Inaccessibility would persuade us to toll the limitations period where the claimant does not have a reasonable time in which to investigate and file his cause of action. However, not every obstruction or inaccessibility will operate to toll the statute. *See Hanebuth,* 694 P.2d at 147 (equitable tolling of wrongful death limitations period undertaken in circumstances where litigant has not had "any reasonable opportunity" to bring suit). Delays in investigating causes of action and potential defendants are to be anticipated. *See Mergenthaler v. Asbestos*

*Corp. of America,* 500 A.2d 1357, 1361 (Del.Super.1985) ("[t]he [c]ourt, however, does not recognize mere delay in obtaining discovery ... as circumstances which would toll the statute of limitations"). Indeed, the length of a limitations period reflects legislative awareness that time is needed to investigate a course of action before filing suit.

In this case, however, it cannot be said that the Palmer estate did not have a "reasonable opportunity" to bring suit against Borg–Warner within two years from the date Mrs. Palmer learned of the accident.[6] Even assuming that the NTSB investigation precluded the estate's own investigation efforts, the estate still had fourteen months after the NTSB released the wreckage to conduct its own investigation into the cause of the crash before the limitations period expired. Moreover, during the period in which the plane was not accessible, no barrier impeded other possible investigations such as that of the relevant literature.

We also note that the pilot's estate filed a timely action against Borg–Warner and that the passenger's estate admits that, but for the pilot's suit, the estate would not have pursued this action. It is difficult to see how Palmer's estate lacked a reasonable opportunity to file suit in light of the pilot's estate's timely filing. There has been no showing that the limitations period was insufficient. Thus, there being no material facts in issue as to the timeliness of the claim, we hold that the estate failed to

---

5. The Palmer estate relies on federal regulations to point out its apparent exclusion from the aircraft wreckage. The Palmer estate cites 49 C.F.R. § 830.10(b), 49 C.F.R. § 831.9(c), and 49 C.F.R. § 831.10–.11 as standing for the proposition that it was precluded from inspecting the wreckage pending the NTSB investigation. Thus, according to the Palmer estate, the statute of limitations period should be tolled during the time the estate had no access, and hence no notice, of their potential claims.

Borg–Warner disputes this contention and claims that under federal law, the estate could have had access if it sought permission.

We assume for purposes of this review that the estate is correct.

6. Airplane accidents are not unusual in Alaska. Yet, we have concluded that "[t]he general safe-

ty record of air travel and the present state of air technology compel us to conclude that air crashes do not normally occur absent negligence, even in inclement weather." *Widmyer v. Southeast Skyways, Inc.,* 584 P.2d 1, 14 (Alaska 1978). Thus, the estate reasonably should have known from the date of being informed of the crash that potential claims existed against the pilot, the carrier, or the manufacturer. One commentator pointed out that "connecting the injury [in an aviation mishap] to a manufacturing flaw often is a lengthy process, and one of the primary dangers to a products liability plaintiff is that, as a general rule, products liability cases are not exempt from the statute of limitations." Note, *Products Liability, the Statute of Limitations, and the Discovery Rule After North Coast Air v. Grumman Corp.,* 25 Willamette L.Rev. 901, 902 (1989).

timely file its complaint against Borg–Warner.

The trial court's grant of summary judgment dismissing the estate's claim against Borg–Warner as time-barred is AFFIRMED.

COMPTON, J., dissents, with whom RABINOWITZ, J., joins.

COMPTON, Justice, with whom RABINOWITZ, Justice, joins, dissenting.

By holding that the statute of limitations (statute) begins to run upon the mere notice of an injury or death, the court is either misapplying a settled rule of law or overruling a long line of Alaska cases. Since I believe the settled rule, properly applied, to be correct, I dissent.

An accurate statement of the settled rule is that the "statute of limitations does not begin to run until the claimant discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action." *Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288, 291 (Alaska 1988) (in suit brought by worker who was injured when safety helmet, designed to protect against blows such as the one suffered, splintered, the accident gave "Stiles ... enough information to give a reasonable person a suspicion that the safety helmet may have failed"); *Russell v. Municipality of Anchorage*, 743 P.2d 372, 375 (Alaska 1987) (in suit alleging gender discrimination, statutory period began to run when plaintiff was told that she was a "minority bump" from the police academy class); *Gudenau & Co., Inc. v. Sweeney Insurance, Inc.*, 736 P.2d 763, 766 (Alaska 1987) (in insurance broker malpractice suit, summary judgment inappropriate where reasonable minds may disagree concerning latest reasonable date of discovery of defendant's failure to procure all-inclusive insurance coverage which defendant promised to provide); *Hanebuth v. Bell Helicopters Int'l*, 694 P.2d 143, 146–47 (Alaska 1984) (in suit for wrongful death arising out of helicopter crash in remote area of Alaska, the wreckage not found until almost eight years after the crash, statute of limitations did not begin to run until plaintiff discovered or reasonably should have discovered the cause of the crash, which could not be determined until after wreckage found); *Greater Area Incorporated v. Bookman*, 657 P.2d 828, 829, 831 (Alaska 1982) (in malpractice suit against attorney for failure to register stock as required by state security laws, statute of limitations did not begin to run until a plaintiff discovered or reasonably should have discovered existence of all elements of his cause of action, not when attorney's negligence occurred). Before a claimant receives notice of facts sufficient to prompt a reasonable person to begin inquiry to protect his or her rights, the claimant is not deemed to be omniscient. Rather, a claimant is deemed only to "have notice of all facts which reasonable inquiry would disclose." *Russell*, 743 P.2d at 376.

In *Mine Safety*, it was "uncontroverted that Stiles knew he was hit in the head while wearing a safety helmet designed to protect against such blows. The helmet cracked and the suspension clips broke upon impact." 756 P.2d at 292. The court noted that a reasonable person would focus immediately upon the safety helmet after receiving a head injury; Stiles was aware at the time of the accident that the helmet did not perform as well as it should have. *Id.* at 292 n. 4. Accordingly, it was reasonable for Stiles to have inquired into the basis for a products liability suit as soon as he regained his competency after the date of the accident. *Id.* at 292. Here, on the other hand, Palmer was not subjectively aware that "engine trouble" was the problem at the time she learned of the crash— September 11, 1986. Thus, the question becomes when Palmer should have reasonably begun inquiry regarding a possible products liability claim based upon "engine trouble."

The linchpin of the court's conclusion is its statement that "[a] careful reading of *Mine Safety* establishes that, upon notification of injury or death, the claimant or estate has an affirmative duty to investigate *all* potential causes of action before the statute of limitations expires." Op. at 634. This is neither a careful reading of

*Mine Safety* nor the issue before the court in this case. It is a reformulation of the rule articulated in *Mine Safety*, and it would require claimants to be omniscient. Under this reformulated rule, in order to act reasonably a claimant must begin an immediate investigation of all possible causes of an accident, no matter how far-fetched, comparatively unlikely, or well-concealed they may be.

Mere knowledge of a plane crash and a resulting death does not put a reasonable person on notice to investigate "engine trouble" (or more narrowly, a possibly defective carburetor) as the basis for a products liability claim. We implicitly rejected this notion in *Hanebuth*, where as here the plaintiffs knew of an accident and deaths, yet nonetheless were permitted to invoke the discovery rule and bring a products liability action over eight years after gaining this knowledge.[1] *See Hanebuth*, 694 P.2d at 147–48.

The Colorado Supreme Court, in *First Interstate Bank of Fort Collins, N.A. v. Piper Aircraft Corp.*, 744 P.2d 1197, 1201 (Colo.1987), explicitly rejected the notion that mere knowledge of death gives constructive notice of a products liability action against the manufacturers of an airplane. The court reasoned:

> As the facts of this case demonstrate, logic and common sense require rejection of this argument.... Negligent conduct [by the manufacturer] cannot be presumed from the happening of an accident, but may be established by the facts and circumstances surrounding the accident. Frequently, some time is required for interested persons to discover sufficient information about the significant circumstances surrounding and contributing to an injury or death to permit accurate assessment of the actual causes of such injury or death. Furthermore, the

pattern of facts surrounding different accidents will by necessity vary widely. For these reasons, the question of whether a plaintiff applied reasonable diligence in discovering that a death was caused by a negligent act must generally be deemed a question of fact for determination by the fact-finder, whether jury or judge. Whether at some fixed moment in time a particular plaintiff should have known the material facts forming the basis of one or more tort claims that might be filed as the result of a death is not a question which may be considered a question of law.

*First Interstate*, 744 P.2d at 1201–02.

Under *Mine Safety* and *Russell*, a claimant is on inquiry notice of a claim when the claimant is in possession (or reasonably should be in possession) of facts drawing (or which reasonably should draw) the claimant's attention to the particular problem. *Mine Safety*, 756 P.2d at 291–92 (when a safety helmet, designed to protect against blows such as the one suffered, splintered, the accident gave "Stiles ... enough information to give a reasonable person a suspicion that the safety helmet may have failed"); *Russell*, 743 P.2d at 376 (claimant was undisputedly thinking along the lines of the eventual cause of action well before two years). While a claimant does not need to know the precise technical explanation for a defect before the statute starts to run, *Mine Safety*, 756 P.2d at 291, she must have notice of facts sufficient to focus her attention on a particular cause of harm.

In short, the relevant inquiry is whether Palmer knew (or should have known) of facts which actually (or should have) focused her attention on a defective carburetor (or even more broadly, "engine trouble") by September 20, 1986, nine days after learning of the accident and two years before the complaint was filed.

---

1. The date of the helicopter flight was October 9, 1974, and thus by deduction the date of the crash was October 9, 1974. Presumptive death certificates were obtained by the families of the decedents declaring October 9, 1974, to be the date of death. The presumptive death certificates were obtained more than two years before the complaint was filed against Bell Helicopter International. Additionally, claims by families of the decedents against Evergreen Helicopters, which operated the Bell helicopter, were settled more than five years before the crash wreckage was found on August 21, 1982. Suit was filed against Bell Helicopters International on October 18, 1982. *Hanebuth*, 694 P.2d at 147–48.

Section 830.10(b) of Title 49 of the Code of Federal Regulations answers whether it was reasonable for Palmer to have had any inkling of "engine trouble" by September 20, 1986. The regulation provides simply and clearly:

*[p]rior to the time the [NTSB] or its authorized representative takes custody of aircraft wreckage,* mail or cargo, *such wreckage,* mail or cargo *may not be disturbed* or moved except to the extent necessary:

(1) To remove persons injured or trapped;

(2) To protect the wreckage from further damage; or

(3) To protect the public from injury.

49 C.F.R. § 830.10(b) (1989) (emphasis added).

In this case, representatives of the NTSB did not get out to the crash site to take custody of the wreckage until September 30. There is no evidence in the record that Palmer knew anything more before then regarding the cause of the crash; indeed, Palmer's affidavit is to the contrary.

It simply cannot be said that Palmer *reasonably* should have known of a possibly defective carburetor (or even · more broadly, "engine trouble") before September 30th, or *reasonably* should have begun an investigation into such a possibility before then. Such a decision faults her for not having raced the NTSB to the crash site and disturbed it.[2] Federal law prohibits such action.[3] To say that Palmer reasonably *should* have begun an investigation before then necessarily implies that she *could* have lawfully done so. Presumably, the court is not advocating that Palmer and others similarly situated violate federal law.

The earliest date that Palmer arguably could have acquired lawful access to the crash site and conceivably could have found out something concerning the cause of the crash is September 30, 1986; the complaint was filed less than two years after this. At the very least this issue was improperly disposed of on summary judgment; a reasonable trier of fact certainly could find that it was reasonable for Palmer to obey unambiguous federal law.

Further, I cannot understand how the court can distinguish this case from *Hanebuth.* As long as federal law prohibits her from inspecting the crash site, a proposition *conceded* by the court, Op. at 636 n. 5, Palmer is in no better position to pursue a products liability claim than were the plaintiffs in *Hanebuth,* who were unable to locate the crash wreckage until five years after the crash.

The court has lost sight of the purpose of the discovery rule. The discovery rule addresses when the statutory time period within which one must bring a claim begins to run. The court instead addresses whether Palmer had a "reasonable" amount of time to sue. Op. at 636. The legislature, not the court, has the authority to establish a "reasonable" amount of time to sue and to adopt a statute of limitations accordingly.

Under the court's analysis of the discovery rule, if the NTSB had not released the aircraft until one month before the two-year anniversary of the crash, Palmer would have either one month or a "reasonable" amount of time to identify the plane's defective component and file a complaint against the component manufacturer. If we assume that identifying suspect components, determining which experts are necessary to analyze the components, and inspecting and testing the components to determine which components are defective, will take more than one month, counsel for Palmer has two choices. One, counsel can investigate thoroughly at the risk that a trial judge will second-guess the reasonableness of the amount of time taken and

---

**2.** This is precisely what the court does. *See* Op. at 634–35 n. 4 (implying that the estate's failure to violate federal law was "dilatory.")

**3.** 49 U.S.C.App. § 1472(p) (Supp.V 1987) (provides for a fine and up to ten years imprisonment for the knowing and unauthorized removal, concealment or withholding of any part of a wrecked aircraft). *See also* 49 U.S.C.App. § 1471(a)(1) (Supp.V 1987) (provides for a civil fine of $1,000 for a violation of 49 C.F.R. § 830.-10(b)).

may dismiss Palmer's complaint. Two, counsel can simply obtain a parts list and sue everybody who manufactured a component used in the aircraft, even though counsel has no factual basis for suing any particular manufacturer. The complaint will not be dismissed for having been filed beyond the statute of limitations, but the Civil Rule 11 sanctions may, and probably should, be horrendous. Do we really want to provide an incentive for baseless lawsuits against all possible defendants? I think not. Apparently the court thinks otherwise.

This case is quite different from an air disaster in which there are survivors, witnesses, or other readily available sources of evidence from which "engine trouble" might be inferred or investigated at the very outset. The NTSB is frequently able to take custody of wreckage within hours of a crash. Under such circumstances it may be reasonable to expect survivors or representatives of decedents to begin investigation of the causes of a plane crash immediately. Here there were no survivors, no witnesses, and no other investigatory avenues to explore. Further, it was illegal for Palmer to inspect the plane before September 30, 1986. Our settled rule of law holds that the statute of limitations cannot begin to run before that date. Accordingly, I dissent.