MAASSEN, Justice.
*707 I. INTRODUCTION
A mother was in the hospital waiting area when her daughter died. The mother sued a number of medical care providers for wrongful death and medical malpractice, as well as for the emotional distress she suffered upon seeing her daughter's body. The superior court dismissed the mother's claim for negligent infliction of emotional distress, reasoning that the tort was not viable absent evidence that the plaintiff contemporaneously understood that her loved one's death had been negligently caused. The mother petitioned for review of this order; we granted review.
We conclude that under our case law, a viable bystander claim for negligent infliction of emotional distress does not depend on the plaintiff's contemporaneous realization that the injuries she observes were negligently caused. We therefore reverse the superior court's grant of summary judgment.
II. FACTS AND PROCEEDINGS
One morning in March 2011, Nixola Doan went to Fairbanks Memorial Hospital with her adult daughter, Tristana, who was coughing and having trouble breathing. Doan stayed with Tristana for much of the day. Around 7:00 p.m. Tristana's condition worsened, and Doan was "ushered ... out" of the room while Tristana was intubated. Doan remained in the waiting area and did not see Tristana again until approximately the time of her death at 11:41 p.m.,[1] when Doan reentered the room and saw her daughter's body.
In 2013 Doan, as the personal representative of Tristana's estate, filed suit against a number of medical care providers, alleging medical malpractice and wrongful death. Doan also brought her own claim for negligent infliction of emotional distress (NIED). Several of the defendants (collectively "the doctors") moved for summary judgment on the NIED claim, arguing that it was legally untenable without evidence that Doan understood, while Tristana was undergoing care, that her caregivers were acting negligently.
The superior court granted summary judgment and dismissed the NIED claim, concluding that Doan failed to satisfy a requirement of the tort that she have "a contemporaneous understanding of the cause of Tristana's death." (Emphasis in original.) Doan sought reconsideration, which the court denied. Doan filed a petition asking us to review the dismissal of her NIED claim; we granted her petition.
III. STANDARD OF REVIEW
We review a grant of summary judgment de novo.[2] "When reviewing a grant of summary judgment, our duty is to determine whether there was a genuine issue of material fact and whether the moving party was entitled to judgment on the law applicable to the established facts."[3] We apply our *708 independent judgment to questions of law and adopt "the rule of law that is most persuasive in light of precedent, reason, and policy."[4]
IV. DISCUSSION
In its decision on summary judgment, the superior court concluded that "[i]nherent in [Alaska's] cases [allowing recovery for NIED] is the contemporaneous comprehension of the cause of the injury"; the court held, therefore, that "in a medical malpractice case, the plaintiff must have a contemporaneous understanding that the cause of the injury is the result of the malpractice." The court acknowledged this effect of its ruling:
[B]ystanders may validly assert bystander NIED claims for blatant medical errors obvious to laypersons, such as negligently amputating a healthy limb or neglecting to care for a patient whose symptoms obviously require immediate attention. But where the causation is beyond the understanding of the lay bystander an NIED claim is not available.
The doctors argue that the superior court correctly stated Alaska law: "As a matter of law, [Doan] cannot recover on [an] NIED bystander claim unless she contemporaneously comprehended that allegedly negligent medical treatment was causing injury to her daughter."
That an injured victim, in order to recover, must contemporaneously comprehend that her injuries were negligently caused is not a usual requirement of a negligence claim. Indeed, tort victims may not know or even suspect that their injuries were negligently caused until they have had some time to investigate; our tort law has long recognized this.[5] Here, the doctors contend that our case law treats NIED claims differently, but-although we acknowledge "the policy favoring reasonable limitations on liability" in this context[6] -we disagree that the doctors' proposed rule is one such reasonable limitation.
We first recognized the NIED cause of action in 1986 in Tommy's Elbow Room, Inc. v. Kavorkian ( Kavorkian III ).[7] In that case, a father and daughter attended a function together but the daughter left first to ride home with another family.[8] A drunk driver struck the family's car.[9] Driving home later, the father passed the scene of the accident without realizing that his daughter was involved.[10] When he arrived home and his daughter was not there, he returned to the scene of the accident in time to see police and medical personnel attempting to remove her from the wreckage.[11]
Accepting the viability of NIED claims under Alaska law, we looked to the guidelines set out by the California Supreme Court in Dillon v. Legg :
(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an *709 absence of any relationship or the presence of only a distant relationship.[12]
We declined, however, to interpret Dillon as imposing a "rigid requirement of sensory and contemporaneous observance of the accident," instead requiring only "the reasonable foreseeability that the plaintiff-witness would suffer emotional harm."[13] After concluding that it was reasonably foreseeable that the father in Kavorkian III would appear at the scene of the accident, we allowed his NIED claim to go forward.[14]
A year later, in Croft ex rel. Croft v. Wicker , we reiterated our rejection of the "strict application of the Dillon guidelines" under which it is "necessary for the plaintiff to have witnessed the tortious event."[15] The plaintiffs in Croft alleged that Wicker molested their teenaged daughter Sarah while giving her a ride on a three-wheeler; the parents did not allege that they witnessed the assault itself but only that they "were in close proximity when Wicker sexually assaulted Sarah and witnessed their daughter's extreme emotional distress, and consequently suffered emotional distress themselves."[16] We explained in Croft our recognition of the NIED tort in Kavorkian III and cited several California cases in which parents who did not witness the tortious event were nonetheless allowed to recover after coming upon the event's immediate consequences.[17] We held that the parents in Croft stated a claim under Alaska law:
[C]oncededly the Crofts did not sensorily and contemporaneously observe the incident of sexual assault alleged here. Our discussion of Kavorkian and the other cases cited makes clear, however, that it is the reasonable foreseeability to the defendant of harm to the plaintiff that generates the defendant's duty to exercise reasonable care.[18 ]
Because "the Crofts were in close proximity to Wicker and Sarah when the alleged incident occurred," because "[t]hey observed her extreme distress just after the alleged assault occurred," and because there was some question as to whether it was "reasonably foreseeable to Wicker that Sarah's parents would be in close proximity and therefore harmed by his actions," the Crofts' claim was sufficiently pleaded to go to the jury.[19]
In this case, in a clarifying order on reconsideration, the superior court focused on a sentence in Mattingly v. Sheldon Jackson College , in which we said that "the shock [must] result more or less contemporaneously with the plaintiff's learning of the nature of the victim's injury."[20] The superior court interpreted this to mean that Doan's recovery depended on her subjective understanding of events; the court read the phrase "the nature of the victim's injury" to mean that an NIED plaintiff must understand not just the physical nature of the injury-traumatic bodily injury or death-but also the legal nature of the injury-negligence.
Mattingly concerned the collapse of a trench in which Mattingly's son had been working.[21] The accident happened in Sitka, but Mattingly was in Ketchikan when he *710 learned of it.[22] The facts of Mattingly thus did not require the court to distinguish between the physical and the legal nature of an injury-Mattingly was not in a position to have directly perceived either one. But explaining why geographical distance precluded Mattingly's NIED claim, we noted that "it cannot be said that the shock of observing his injured son ... followed 'closely on the heels of the accident,' " that Mattingly "had time to steel himself during his flight to Sitka," and that "[t]here was no sudden sensory observation of his injured son ."[23] Thus, in the context of describing "the nature of the victim's injury," our focus was on the victim-the sight of whom is likely to cause the emotional harm-rather than the actions of the tortfeasor. And to support the sentence in Mattingly that contained the phrase "the nature of the victim's injury," we cited Croft , which, as noted above, explicitly rejected a requirement that the plaintiff observe the tortious act as opposed to its immediate impact on the victim.[24]
We reaffirmed this interpretation of the NIED claim in Beck v. State, Department of Transportation & Public Facilities , in which we declined to follow the California Supreme Court's tightening of the Dillon test.[25] A mother was at home when she learned that her daughter had been involved in an accident six miles away.[26] The mother immediately drove to the scene, but rescue workers prevented her "from approaching the wrecked vehicle which still contained her injured daughter."[27] The mother then drove to the hospital, where she "saw her injured daughter for the first time."[28] She later sued the State for negligent maintenance, repair, and signage, alleging that road crews had negligently left "rain soaked slide debris on the roadway" which both obscured the lane markings and caused her daughter to lose control.[29]
The State in Beck urged us to follow the approach taken by the California Supreme Court in Thing v. La Chusa .[30] Decided after Kavorkian III , Croft , and Mattingly -and concluding that the Dillon factors were leading "to uncertainty and 'ever widening circles of liability' "[31] - Thing adopted a "bright-line" interpretation of Dillon that required, as its second element, that the plaintiff be "present at the scene of the injury[-]producing event at the time it occurs and [be] then aware that it is causing injury to the victim."[32] In Beck we decided, however, "that both justice and the policy favoring reasonable limitations on liability [could] be served with a less restrictive approach than that taken by the Thing court": We held
that one who is thrust, either voluntarily or involuntarily, into such dramatic events and who makes a sudden sensory observation of the traumatic injuries of a close relative in the immediate aftermath of the event which produced them is no less entitled to assert a claim for his or her emotional injuries than one who actually witnessed the event.[33 ]
Because in Beck the mother's "emotional shock resulted from her observation of her daughter's traumatic injuries during the continuous *711 flow of events in the immediate aftermath of the accident, and because it cannot be said that she had time to 'steel herself' as did the plaintiff in Mattingly ," we concluded "that her injury was foreseeable" and her NIED claim should be presented to the jury.[34]
None of these formative cases- Kavorkian III , Croft , Mattingly , or Beck -supports the rule the doctors propose here: that Doan "cannot recover on [an] NIED bystander claim unless she contemporaneously comprehended that allegedly negligent medical treatment was causing injury to her daughter." The father in Kavorkian III brought a dram shop action against the bar that had served alcohol to the driver who allegedly caused the accident.[35] The father clearly knew there had been an accident when he saw his injured daughter being extricated from the wreckage, but there is no indication he knew anything about its cause, let alone that it involved the negligence of a server in a bar some distance away. The parents in Croft knew that something had happened when they witnessed their daughter's emotional distress at the end of her three-wheeler ride, but there is no indication they "contemporaneously comprehended" that her distress was caused by Wicker's sexual assault. The father in Mattingly was denied relief because he had time to steel himself before viewing his son's injuries; whether he had any contemporaneous understanding of the cause of the trench's collapse played no part in our opinion (though under the doctors' proposed rule it could have been dispositive). And the mother in Beck , like the father in Kavorkian III , knew there had been an accident when she viewed its wreckage and then saw her daughter at the hospital, but again there is no indication that she contemporaneously comprehended the allegedly negligent cause-involving the State's work on the road. Determinative in each of these cases-entitling the parents to a possible tort recovery in Kavorkian III , Croft , and Beck and precluding the father's recovery in Mattingly -was simply whether there was a "sudden sensory observation of the traumatic injuries of a close relative in the immediate aftermath of the event which produced them."[36]
It is the emotional impact of the injury that the NIED tort is intended to address. To require that an emotionally distressed plaintiff also recognize negligence as it is occurring is asking too much. As noted above, negligence is not always obvious; a conclusion that someone was negligent often follows the acquisition of facts not readily apparent from the scene itself, e.g., that one driver was under the influence of alcohol, that he was negligently served at a bar, that the roadway was poorly maintained, or that a vehicle's brakes failed. Requiring a contemporaneous perception of negligence adds an element of caprice that has no relationship to the harm suffered. When confronted with a sudden, terrible injury to a loved one, one plaintiff might retain the clarity of mind necessary to judge the reasonableness of the tortfeasor's actions, while another plaintiff might be overwhelmed by the trauma or consumed by concern for the loved one. Under the doctors' proposed rule the first plaintiff will recover but the second will not. Recovery may also depend on the plaintiff's level of sophistication, particularly in the area of medical malpractice (as the superior court recognized in limiting recovery to "blatant medical errors obvious to laypersons"). A physician who recognizes negligence in the care of a loved one may recover, whereas a layperson who suffers the same emotional hurt but lacks a medical education has no remedy. And the rule raises difficult questions of how closely the plaintiff's perception *712 of negligence must match the proof at trial.[37]
The doctors contend that this court "has never permitted recovery for negligent infliction of emotional distress in favor of a non-patient against a medical provider for treatment provided to a family member/patient," but the cases they cite do not preclude such a recovery. In Chizmar v. Mackie , which the doctors cite for the proposition that NIED claims cannot be based on "foreseeability alone," we held that "a plaintiff's right to recover emotional damages caused by mere negligence should be limited to those cases where the defendant owes the plaintiff a preexisting duty."[38] Chizmar was not a bystander claim but rather involved a patient's claim against her physician; we held that the superior court erred by directing a verdict against the plaintiff on the claim.[39] But we also held that we did not intend to "modify the requirements for 'bystander' recovery we applied in Mattingly ."[40] Chizmar -and other "preexisting duty" cases on which the doctors rely[41] -are largely irrelevant to our discussion today.[42]
The doctors also cite M.A. v. United States , in which we determined, on a certified question from the federal court, that a mother did not have an NIED claim arising from a doctor's negligent failure to diagnose the pregnancy of her minor daughter.[43] But the mother's claim failed for a number of reasons, none of which are determinative here:
[The mother] was not in close proximity to [the daughter], either at the time of the alleged misdiagnosis or when [the daughter] subsequently learned of her pregnancy; [the mother's] eventual "shock," if any, does not appear to have occurred contemporaneously with her daughter's discovery of the injury; and there is no indication that the immediate "shock" came in response to the alleged injury-the lateness of the pregnancy's discovery-rather than to discovery of the pregnancy itself.[44 ]
Here, on the other hand, taking Doan's allegations as true,[45] she was in close proximity to her daughter both at the time of the defendants' negligence and at the time of her daughter's death; the defendants' negligence caused the death; and Doan's shock occurred contemporaneously when she observed her daughter's body.
The doctors contend that Doan's NIED claim not only is barred by our existing case *713 law but also contravenes legislative policy, evident in AS 09.55.530 - .560, setting out procedural and evidentiary rules for medical malpractice cases, including limitations on damages. But none of the cited statutes address the viability of a bystander NIED claim. And although the doctors predict that allowing NIED claims in circumstances like these "[will] greatly burden the medical community," we note that our case law has never excepted "the medical community" from NIED claims. Such claims involving medical care providers have been available since we decided Kavorkian III in 1986, subject to the same stringent requirements of proof applicable in other tort contexts, and they have not prompted a crisis of care or a legislative response.[46]
We conclude, in sum, that a bystander's claim for NIED remains as it was explained in Kavorkian III , Croft , Mattingly , and Beck :
Where, as here, the plaintiff experiences shock as the result of a sudden sensory observation of a loved one's serious injuries during an uninterrupted flow of events following "closely on the heels of the accident," such emotional injury is foreseeable and the plaintiff is entitled to assert a claim for NIED.[47]
The test contains no requirement that the plaintiff contemporaneously comprehend that the loved one's injuries were negligently caused. Doan's complaint stated a claim for relief under a bystander theory of recovery for NIED, and the claim should have survived summary judgment.[48]
V. CONCLUSION
We REVERSE the entry of summary judgment against Doan on her claim for negligent infliction of emotional distress and REMAND the case to the superior court for further proceedings consistent with this opinion.

Whether Tristana died shortly before or shortly after Doan last entered the room is unclear from our record but not material to our decision.

Harrell v. Calvin , 403 P.3d 1182, 1185 (Alaska 2017) (citing Hurn v. Greenway , 293 P.3d 480, 483 (Alaska 2013) ).

Id. at 1185-86 (quoting Palmer v. Borg-Warner Corp. , 818 P.2d 632, 634 (Alaska 1990) ).

Dixon v. Dixon , 407 P.3d 453, 457 (Alaska 2017) (quoting Vezey v. Green , 35 P.3d 14, 20 (Alaska 2001) ).

See Yurioff v. Am. Honda Motor Co. , 803 P.2d 386, 389 (Alaska 1990) ("When the nature of the injury, or the nature of the cause of the injury, prevents a plaintiff from discovering facts essential to his claim, the discovery rule tolls the statute [of limitations] until the plaintiff discovers or reasonably should have discovered that he has a case."); see also Palmer , 818 P.2d at 634 ("Upon notification of an airplane crash, a reasonable person has, as a matter of law, enough information to be alerted that she 'should begin an inquiry' concerning a potential cause of action against the pilot, the carrier or the manufacturer.").

See Beck v. State, Dep't of Transp. & Pub. Facilities , 837 P.2d 105, 110 (Alaska 1992).

727 P.2d 1038, 1043 (Alaska 1986).

Id. at 1040.

Kavorkian v. Tommy's Elbow Room, Inc. (Kavorkian I ), 694 P.2d 160, 162 (Alaska 1985).

Kavorkian III , 727 P.2d at 1040.

Id.

Id. at 1041 (quoting Dillon v. Legg , 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912, 920 (1968) ).

Id. at 1043.

Id .

737 P.2d 789, 791 (Alaska 1987).

Id. at 790.

Id. at 792 ; see also id. at 791-92 (summarizing California cases as concluding "that there were triable issues of fact as to whether the alleged harm to the mother resulted from an emotional shock caused by the direct emotional impact from the contemporaneous observation of the immediate consequences of the defendant's negligent act causing the injury and death of her son" and "that the shock of seeing a child severely injured immediately after the tortious event may be just as profound as that experienced in witnessing the accident itself, and that therefore the plaintiff had met the contemporaneous observance requirement" (first citing Nazaroff v. Superior Court, 80 Cal.App.3d 553, 145 Cal. Rptr. 657 (1978) ; then citing Archibald v. Braverman, 275 Cal.App.2d 253, 79 Cal. Rptr. 723 (1969) )).

Id. at 792.

Id.

743 P.2d 356, 365-66 (Alaska 1987).

Id. at 358.

Id. at 358, 365.

Id. at 365-66 (emphasis added).

Id. at 366 n.3 (citing Croft , 737 P.2d 789 ).

837 P.2d 105, 110 (Alaska 1992) (citing Thing v. La Chusa , 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814 (1989) ).

Id. at 109.

Id.

Id. at 109-10.

Id. at 108.

Id. at 110.

Id. at 110 n.2 (quoting Thing , 257 Cal.Rptr. 865, 771 P.2d at 819 ).

Thing , 257 Cal.Rptr. 865, 771 P.2d at 829-30 ; see Beck , 837 P.2d at 110 n.2. The second Dillon element, which we decided in Kavorkian III to give its "more liberal interpretation," 727 P.2d 1038, 1043 (Alaska 1986), had previously required that "the shock result[ ] from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence." Id. at 1041 (quoting Dillon v. Legg , 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912, 920 (1968) ).

Beck , 837 P.2d at 110.

Id. at 111.

727 P.2d at 1039-40 ; see also Kavorkian v. Tommy's Elbow Room (Kavorkian II ), 711 P.2d 521 (Alaska 1985) (detailing alcohol-related aspects of case).

Beck , 837 P.2d at 110 ; see Mattingly v. Sheldon Jackson Coll. , 743 P.2d 356, 366 (Alaska 1987) ("There was no sudden sensory observation of his injured son."); Croft ex rel. Croft v. Wicker , 737 P.2d 789, 792 (Alaska 1987) ("[The parents] observed [the daughter's] extreme distress just after the alleged assault occurred."); Kavorkian III , 727 P.2d at 1043 ("Upon arriving at the scene, ... [the father] perceived and suffered shock from observing his child's injury.").

Assume, for example, that the plaintiff perceives that a nurse is providing negligent care when the nurse is actually following the negligent instructions of a supervisor. May the plaintiff recover for NIED even though she misidentified the negligent actor? If the plaintiff perceives one actor's negligence but later learns that others were negligent as well, are her emotional distress damages prorated to reflect only the negligence she contemporaneously recognized? May the plaintiff recover if the evidence shows negligence but not as the plaintiff contemporaneously perceived it (e.g., she thought a nurse failed to give a necessary medication when actually the nurse gave too much)?

896 P.2d 196, 203 (Alaska 1995).

Id. at 205.

Id. at 204.

The doctors discuss the preexisting duty cases of Hawks v. Department of Public Safety , 908 P.2d 1013, 1016-17 (Alaska 1995), and Karen L. v. State, Department of Health & Social Services, Division of Family & Youth Services , 953 P.2d 871, 875-78 (Alaska 1998). The doctors point out that we discussed bystander cases in Karen L. , but we explicitly noted that they were decided "[i]n another context," id. at 875, and we cited them only to illustrate the concept of foreseeability common to all NIED claims. See Kallstrom v. U.S. , 43 P.3d 162, 165-66 (Alaska 2002) (outlining distinction between bystander and preexisting duty theories of NIED recovery).

The doctors assert that we "affirmed the trial court's 'finding that no duty was owed to the [plaintiff's] children under a negligent infliction of emotional distress claim,' " quoting our discussion of the trial court proceedings, but the children's NIED claim was not at issue on appeal. We did address the children's separate loss of consortium claim. Chizmar , 896 P.2d at 212-13.

951 P.2d 851, 856 (Alaska 1998).

Id.

See Mitchell v. Teck Cominco Alaska Inc. , 193 P.3d 751, 757-58 (Alaska 2008) ("[T]he non-movant's version of the facts must be accepted as true and capable of proof, and we make no attempt to weigh the evidence or evaluate witness credibility. All reasonable inferences to be drawn from the facts presented must be drawn in favor of the non-moving party." (footnote omitted)).

The doctors rely on cases from several other states besides the later California cases that narrowed the Dillon test. Other jurisdictions reject NIED claims in the medical malpractice context for different reasons. Several disallow them because of the bystander's likely inability to distinguish between proper and negligent medical care-a rationale which supports our decision here. See Squeo v. Norwalk Hosp. Ass'n , 316 Conn. 558, 113 A.3d 932, 946 (2015) ("[T]he rule [limiting NIED claims to cases of gross negligence obvious to a lay observer] recognizes that laypeople are not qualified to assess whether most types of medical judgments and procedures meet the relevant standard of care."); Edinburg Hosp. Auth. v. Treviño , 941 S.W.2d 76, 81 (Tex. 1997) ("A bystander may not be able to distinguish between medical treatment that helps the patient and conduct that is harmful."). The Wisconsin Supreme Court has decided that the state's Medical Malpractice Act "exclusively governs all claims arising out of medical malpractice" and that bystander NIED claims are not allowed because they are not included in the Act. Phelps v. Physician's Ins. Co. of Wis., Inc. , 319 Wis.2d 1, 768 N.W.2d 615, 635-36 (2009). We do not discern a consistent treatment of such claims by other state courts that should make us reconsider our own case law.

Beck v. State, Dep't of Transp. & Pub. Facilities , 837 P.2d 105, 110 (Alaska 1992).

We note finally that the doctors raise several alternative arguments that were not addressed by the superior court, including: (1) that Doan's NIED claim is entirely barred by the wrongful death statute, AS 09.55.580, and (2) that Doan has a disqualifying conflict of interest as both representative of the estate and individual plaintiff on the NIED claim. Because the superior court has not addressed these issues, we do not decide them on this petition.